Thomas H. Nelson, OSB No. 78315 (nelson@thnelson.com)
P.O. Box 1211, 24525 E. Welches Road
Welches, OR  97067
Telephone: 503.622.3123; Fax: 503.622.1438

J. Ashlee Albies, OSB No. 05184 (Ashlee@AlbiesLaw.com)
205 S.E. Spokane Street, Suite 319
Portland, OR  97202
Telephone: 503.963.3751; Fax: 503.238.7501

David D. Cole, DC Bar No. 438355 (Cole@law.georgetown.edu)
c/o Georgetown University Law Center
600 New Jersey Avenue N.W.
Washington, D.C. 20001
Telephone: 202.662.9078

Lynne Bernabei, DC Bar No. 938936 (Bernabei@bernabeipllc.com)
Alan R. Kabat DC Bar No. 464258 (Kabat@bernabeipllc.com)
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
Telephone: 202.745.1942; Fax: 202.745.2627

Counsel for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| Al-Haramain Islamic Foundation, Inc. *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> United States Department of the Treasury, *et al.*, <br><br> Defendants. | Case No. 07-CV-1155-KI <br><br> **MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiffs are requesting this Court to issue a preliminary injunction prohibiting

Page 1 – MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

defendants from (i) engaging in the interception of privileged attorney-client communications and privileged attorney-attorney consultations and communications regarding the subject matter of this litigation, and (ii) using in this litigation or elsewhere any privileged attorney-client communications and privileged attorney-attorney consultations and communications regarding the subject matter of this litigation. The reasons for these requests are set forth below.

## I. STANDARD for ISSUANCE OF PRELIMINARY INJUNCTION

In determining whether to issue a preliminary injunction, the trial court is instructed to balance several factors, primarily the strength of the movant's case on the one hand and the relative hardships of the parties on the other. As the Court of Appeals for the Ninth Circuit explained three years ago, in *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005):

> As we observed in *Clear Channel Outdoor, Inc. v. City of Los Angeles,* "[t]he standard for granting a preliminary injunction balances the plaintiff's likelihood of success against the relative hardship to the parties." 340 F.3d 810, 813 (9th Cir. 2003). We have described two sets of criteria for preliminary injunctive relief. Under the "traditional" criteria, a plaintiff must show "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Johnson v. Cal. State Bd. of Accountancy,* 72 F.3d 1427, 1430 (9th Cir. 1995). Alternatively, a court may grant the injunction if the plaintiff "demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* (internal quotation marks omitted).
>
> As we have said many times regarding the two alternative formulations of the preliminary injunction test: "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." *Baby Tam & Co. v. City of Las Vegas,* 154 F.3d 1097, 1100 (9th Cir. 1998) (internal quotation marks and citations omitted).

The following establishes that plaintiffs' case for an injunction is quite strong and that the public interest overwhelmingly supports curbing the government's illegal monitoring of privileged communications. For these reasons an injunction should issue.

**II. BACKGROUND: PRIOR USE OF ILLEGALLY INTERCEPTED PRIVILEGED COMMUNICATIONS**

On September 9, 2004, defendant United States Department of the Treasury "designated" plaintiff Al-Haramain Islamic Foundation, Inc., ("AHIF") as a "specially designated global terrorist," or "SDGT." In a press release accompanying that designation Department of Treasury spokesperson Stuart Levey asserted that there were "direct links" between plaintiff AHIF on the one hand and Usama bin Laden on the other. See Exhibit 1, Press Release dated September 9, 2004. Plaintiff AHIF believes that the allegation of "direct links" was the result of the United States government's warrantless interception of privileged attorney-client communications between AHIF director Soliman H. Al-Buthi and two of his attorneys in Washington, D.C., Wendell Belew, Esq., and Asim Ghafoor, Esq. In support of that belief Mr. Ghafoor filed with this Court under seal a declaration in *Al-Haramain Islamic Foundation, Inc. v. Bush*, which declaration plaintiff understands this Court reviewed prior to transfer of the case to Judge Vaughn Walker pursuant to an order from the Judicial Panel on Multi-District Litigation in Docket MDL No. 06-1791. The declaration provides the factual basis behind plaintiff's belief that the United States misconstrued or misunderstood the privileged attorney-client communications it illegally intercepted and, based upon such misconstrued and misunderstood conversations, used those illegal interceptions when it decided to designate AHIF and Mr. Al-Buthi as SDGTs.[1]

---

[1] Misconstrued surreptitious interceptions of communications between Al-Haramain personnel and third parties figured prominently in the case of Laid Saidi, who was Al-Haramain Foundation's country director for Tanzania in 2003. Mr. Saidi was abducted by CIA personnel and taken to an Afghan secret detention center, where for 16 months he endured torture, all at the hands of American authorities, based upon the Americans' mistaken interpretation of intercepted telephone calls involving the purchase of automobile tires. These events commenced in mid-2003 and ended late in 2004, when the CIA conceded its mistake and released Mr. Saidi in Algiers – which, of course, is the same time period involved in the interception of Mr. Al-Buthi's telephone calls. *See* Craig Smith and Souad Mekhennet, *Algerian Tells of Dark Term in U.S. Hands*, <u>New York Times</u> (July 7, 2006) (attached as Exhibit 2); Jerome Taylor, *CIA Sent Me to be to be Tortured in Afghan Prison, Says Algerian*, <u>Independent</u> (July 8, 2006).

Page 3 – MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

### III. THE CURRENT NEED FOR PROTECTION AGAINST
### ILLEGAL INTERCEPTION OF PRIVILEGED COMMUNICATIONS

Since the government's warrantless wiretapping of privileged attorney-client communications was first revealed in 2004, plaintiffs' counsel have been concerned that governmental officials have been routinely engaging in electronic eavesdropping on their most sensitive of communications with their clients and among themselves. Department of Justice officials and attorneys have provided solid evidence that such a concern is justified; for example, in a lawsuit by the American Civil Liberties Union challenging the President's warrantless electronic surveillance program, counsel for the National Security Agency, Anthony J. Coppolino, stated that lawyers who represent suspected terrorists "come closer to being in the ballpark of the terrorist surveillance program." Adam Liptak, *U.S. Asks Judge to Drop Suit on N.S.A. Spying*, New York Times, June 13, 2006, at A15, a copy of which is attached as Exhibit 4. As a consequence of the concern that the United States is intercepting their privileged communications, on October 11, 2007, Lynne Bernabei, one of the plaintiffs' attorneys in *Al Haramain Islamic Foundation, et al. v. U.S. Department of the Treasury, et al.*, No. 3:07-DV-1155-KI (D. Or), wrote to defendants' attorney Andrea Gacki requesting written confirmation that plaintiffs' attorney-client and attorney-attorney communications were not being monitored. The scope of the requested written confirmation encompassed telephone, e-mail, facsimile, postal mail, or any other medium, noting that such monitoring "would constitute an improper and impermissible interference with the attorney-client privilege and the attorney work product doctrine." Letter of Lynne Bernabei to Andrea Gacki, October 11, 2007, attached as Exhibit 5 at 1. In response, Ms. Gacki wrote back on November 2, 2007, stating that "The United States government cannot publicly confirm or deny whether your clients' communications are being intercepted by classified means." Letter of Andrea Gacki to Lynne Bernabei, November 2, 2007,

Page 4 – MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

attached as Exhibit 6.  Ms. Gacki's letter declined to respond to *any* questions in Ms. Bernabei's letter, *id.* at 2, including Ms. Bernabei's inquiry about attorney-attorney work-product communications.  In response, Ms. Bernabei wrote to Ms. Gacki on November 29, 2007, objecting to the government's refusal to respond substantively to the inquiries contained in Ms. Bernabei's October 11 letter.  Letter of Lynne Bernabei to Andrea Gacki, November 29, 2007, attached as Exhibit 7.

Because attorneys occupy a position of special trust in the American judicial system their actions must conform with legal ethics at all times – even when the conduct itself is not *per se* illegal.  Plaintiffs assert that the warrantless interception of privileged communications itself violates the criminal prohibitions of the Foreign Intelligence Surveillance Act, specifically 50 U.S.C. § 1809.  In this regard it is noteworthy that, notwithstanding the publicly reported decision by the Bush Administration to seek FISA warrants, the Bush Administration has specifically reserved for itself the right to engage in warrantless wiretapping at any time.  White House Press Release, *President Visits National Security Agency* (January 25, 2006).  Here, of course, the interception itself was not only illegal, it was a direct invasion of the privilege of attorney-client communications.  It is an almost universal requirement that attorneys not knowingly receive, review, or use information or material that is the subject of a valid attorney-client privilege.  For example, the American Bar Association's Model Rule of Professional Conduct 4.4(a) provides, "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, *or use methods of obtaining evidence that violate the legal rights of such a person.*"  (Emphasis added.)  Moreover, attorneys may not use a nonlawyer (such as an investigator) to unlawfully obtain conversations otherwise protected by the attorney-client privilege and by other substantive law.  ABA Model

Page 5 – MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Rule 8.4(a) provides: "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, *or do so through the acts of another . . . .*" (Emphasis added.) See also, Virginia Formal Ethics Opinion No. 1702 (Nov. 24, 1997) (privileged or confidential information even inadvertently received may not ethically be retained or used).

As a result of the foregoing, plaintiffs in this litigation and their counsel have a reasonable suspicion that defendants and those associated with and representing defendants are monitoring their privileged communications. This suspicion has necessarily diminished the quality of legal services that plaintiffs' counsel are able to provide as well as inflicting great hardship on plaintiffs and their counsel. Specifically, because of defendants' past actions and stated present position, plaintiffs' counsel are reluctant to use electronic communications when dealing with strategic or confidential matters. Moreover, because of the distance separating counsel, face-to-face meetings are expensive and difficult to arrange and, when sensitive matters need to be discussed with clients, travel to Saudi Arabia is required – which means an expensive and exhausting multiple-leg trip that takes up to 36 hours each way.

The defendants' refusal to state categorically that they are not intercepting privileged communications implicates four distinct areas, each of which alone is sufficient to require the issuance of an injunction. Those areas are (i) attorney-client privilege, (ii) attorney work product privilege, (iii) attorney's fiduciary duty of ethical conduct toward clients, and (iv) the Sixth Amendment right to effective assistance of counsel. Each of these four areas is discussed separately.

*<u>Attorney-Client Confidentiality</u>*

Counsel for plaintiffs in this litigation represent a number of individuals and organizations, many if not most of whom are obvious targets for the government's wiretapping. Those clients include Soliman H. Al-Buthi (client of Lynne Bernabei and Thomas Nelson), Al-Haramain Islamic Foundation, Inc. (client of all counsel), Pirouz Sedaghaty (civil client of Lynne Bernabei and Thomas Nelson), and Wendell Belew and Asim Ghafoor (clients of Thomas Nelson and Ashlee Albies). These attorney-client relationships are, of course, privileged as a matter of law.

As the Supreme Court has consistently held, the "attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (collecting cases). The privilege "is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The privilege covers both confidential communications from a client to an attorney relating to actual or potential legal representation *and* communications from the attorney to the client that rest on, or are derived from, confidential information obtained from the client, provided that the communications are for the purpose of obtaining a legal opinion, legal services, or assistance in a legal proceedings. *See In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1994). The privilege belongs to the client, not the attorney, and the attorney cannot waive the privilege on his or her own. *Id.*

The privilege extends to electronic communications, including e-mails. *See, e.g., D.C. Bar Ethics Op. 281,* "Transmission of Confidential Information by Electronic Mail" (Feb. 18, 1998). As attorneys, plaintiffs' counsel are obliged to take all steps possible to maintain the

Page 7 – MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

confidentiality of their communications with clients. *Id.; see also* D.C.R. Prof. Conduct 1.6(a)(1) ("a lawyer shall not knowingly . . . reveal a confidence or secret of the lawyer's client"). That a "wire, oral, or electronic communication" is intercepted does not "lose its privileged character" as a result of the interception whether legal or not. *See* 18 U.S.C. §2517(4) ("No otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this chapter [18 U.S.C. § 2510 *et seq*.] shall lose its privileged character.")

Here, counsel's communications with AHIF and its officers, directors, and outside attorneys are privileged, since the Bernabei firm was originally retained in November 2002 to represent AHIF and two of its officers in connection with a civil lawsuit, *Burnett, et al. v. Al Baraka, et al.* (now consolidated into No. 03 MDL 1570, pending in the U.S. District Court for the Southern District of New York). The Bernabei firm was subsequently retained to represent AHIF with respect to (i) the blocking of its assets by the Office of Foreign Assets Control, Department of Treasury (OFAC), on February 19, 2004, (ii) OFAC's designation of AHIF and Mr. Al-Buthi as a Specially Designated Global Terrorists on September 9, 2004, and (iii) the challenges to those designations. Plaintiffs' co-counsel also represent AHIF and its directors in the pending criminal prosecution in the U.S. District Court for the District of Oregon for tax matters, as well as the challenge to the legality of the wiretapping program, now on remand from the Ninth Circuit. Because AHIF has been inactive since its assets were frozen on February 19, 2004, and the Bernabei firm has not served as corporate counsel, its advice has been entirely legal advice, as opposed to internal business advice.

Courts have held that it is improper for the government to interfere with, or abrogate, the attorney-client privilege. Recently, U.S. District Judge Kollar-Kotelly, in a case involving the

government's proposed monitoring of written and oral communications between a Guantanamo detainee and his attorneys, held that such monitoring would "impermissibly burden the attorney-client relationship and abrogate the attendant attorney-client privilege." *Al Odah v. United States*, 346 F. Supp. 2d 1, 15 (D.D.C. 2004).[2] Judge Kollar-Kotelly stated that the United States Government, in responding to the petitioner's arguments regarding the attorney-client privilege, had failed to provide any controlling precedent, let alone marginally relevant case law from other circuits, that would allow the monitoring of attorney-client communications:

> The Government attempts to erode this bedrock principle with a flimsy assemblage of cases and one regulation. The Government presents no case law, nor any statutory basis indicating that monitoring of attorney-client communications is permissible. Instead, the Government cites to various cases and a Bureau of Prisons regulation that do not support their proposed procedures.

*Id.* at 12. For that reason, and even though "legitimate national security concerns" were present with respect to the Guantanamo detainees, *id.* at 13, Judge Kollar-Kotelly established a framework under which the Government could not monitor attorney-client communications, unless the attorney "wanted to disclose the information to anyone" else, in which case those communications would *only then* be subject to classification review. *Id.* at 13-14.

Subsequently, the U.S. Court of Appeals for the District of Columbia Circuit imposed an even more stringent review process under which written communications between a detainee and his attorney could only be monitored by a "Privilege Team," which would "protect[] the confidentiality of communications between counsel and the detainee by providing that the Privilege Team may not disclose the content of a communication to anyone" unless the attorney sought to prevent screening, in which case "the Privilege Team may disclose the material at issue to a Special Litigation Team," who, in turn, would also be prevented from any involvement with

---

2 The *Al Odah* litigation is on appeal to the U.S. Supreme Court, No. 06-1196 (argument held Dec. 5, 2007), but on the unrelated issue of the legality of the Military Commissions Act of 2006 and the ability of the

Page 9 – MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

litigating the merits of the detainees' petitions.  *Bismullah v. Gates*, 510 F.3d 178, 189-90 (D.C. Cir. 2007), *reh'g denied*, 503 F.3d 137 (D.C. Cir. 2007); *see also* Protective Order, No. 06-1197, at § 4.A - § 4.J (D.C. Cir. Oct. 23, 2007) ("Roles and Functions of the DoD Privilege Team and Special Litigation Team").

The U.S. Supreme Court as well as lower courts have similarly recognized that attempts by the government to intrude on attorney-client communications are contrary to the fundamental principles of that privilege.  In *Weatherford v. Bursey*, 429 U.S. 545 (1977), the Supreme Court stated that having an informant sit in on attorney-client meetings was a "lesser" intrusion on the privilege than electronic eavesdropping, because the former could be mitigated by excluding third parties during meetings, but the latter could not be mitigated by any circumstance:

> However, a fear that some third party may turn out to be a government agent will inhibit attorney-client communication to a lesser degree than *the fear that the government is monitoring those communications through electronic eavesdropping*, because the former intrusion may be avoided by excluding third parties from defense meetings or refraining from divulging defense strategy when third parties are present at those meetings.

*Weatherford v. Bursey*, 429 U.S. 545, 554 (1977) (emphasis added).  Similarly, Judge Posner recognized that it would be improper to monitor attorney-client communications, even if the information was not disclosed to prosecutors, simply because it would have a chilling effect on the ability of attorneys and their clients to communicate freely:

> We put to the government at oral argument the following example.  The government adopts and announces a policy of taping *all* conversations between criminal defendants and their lawyers.  It does not turn the tapes over to the prosecutors. . . . The government's lawyer took the position that none of the defendants could complain about such conduct because none could be harmed by it, provided the prosecutors never got their hands on the tapes.  We are inclined to disagree . . . . The hypothetical practice that we have described would, because of its pervasiveness and publicity, *greatly undermine the freedom of communication between defendants and their lawyers and with it the efficacy of the right to counsel, because knowledge that a permanent record was being made of the conversations between the defendants and their lawyers would make the defendants reluctant to make candid disclosures.*  (Totalitarian-style continuous surveillance must surely be a great inhibitor of communication.)

---

detainees to file habeas petitions with the federal courts.

Page 10 – MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

*United States v. DiDomenico*, 78 F.3d 294, 299 (7th Cir. 1986) (emphasis added).  Here, there is a strong likelihood that information derived from monitoring of plaintiff counsel's attorney-client communications is, in fact, being shared with the prosecutors in Oregon, and the Department of Justice attorneys who are defending the civil actions brought by AHIF, and the attorneys at OFAC, given that recent communications from OFAC have requested that plaintiff counsel's responses be copied to OFAC's office.

Therefore, at a minimum, if the United States Government is going to continue to monitor plaintiff counsel's communications with AHIF and its current or former directors, officers, and attorneys, or to make any use of previous monitoring of attorney-client communications (whether in civil or criminal litigation), then the Government must implement steps to ensure that those communications are *not* disclosed to Government attorneys who are involved in the prosecution of AHIF and its former officers or to the Government attorneys who are involved in the defense of civil litigation initiated by AHIF, including the challenge to the OFAC designation, and the wiretapping surveillance challenge.  In this case, plaintiffs have every reason to believe that the information that is being collected on them and their counsel through the government surveillance program is, in fact, being shared with Department of Justice personnel and other government attorneys who are prosecuting AHIF and Mr. Seda and defending the government in AHIF's civil lawsuits, in the U.S. District Court for the District of Oregon.  Thus, the United States must be prohibited from using any information obtained through surveillance of plaintiffs' attorney-client communications (remembering that the illegally intercepted attorney-client communications reflected in the Document were used for the purpose of imposing sanctions on AHIF and Mr. Al-Buthi).  Finally, such communications cannot form the basis for any civil, criminal, or administrative action taken or proposed to be

Page 11 – MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

taken against AHIF and its officers, directors, and outside attorneys. Any other procedure would be contrary to the court's rulings in *Al Odah* and *Bismullah*, and would improperly interfere with the attorney-client privilege.

In addition to prohibiting use of intercepted privileged communications against those associated with AHIF, the government must also take steps to preserve evidence of such intercepts. Recently, U.S. District Judge Leonie Brinkema warned that the government's failure to disclose possible warrantless surveillance of a defendant convicted of terrorism charges could require a new trial, and complained that she had "lost a great deal of confidence in the representations made to me by folks in the intelligence world" about these surveillance programs. United States v. Al-Timimi, No. 1:04-cr-00385-LMB (E.D. Va. Nov. 20, 2007); see also J. Markon, *Government Secrecy May Lead to New Trial in Va. Terrorism Case,* Washington Post, at A-8 (Nov. 21, 2007); E. Lichtblau, *Wiretap Issue Leads Judge to Warn of Retrial in Terror Case*, New York Times at A-18 (Nov. 21, 2007). Still more recent is the CIA's destruction of video tapes showing "aggressive interrogation" of suspected terrorists in apparent violation of a court order prohibiting such conduct. Matt Apuzzo, *Justice Department Opens Criminal Investigation of CIA Tapes*, Seattle Times (Jan. 2, 2008).

Here, the high likelihood that the government has monitored plaintiffs' attorney-client communications and work product relating to AHIF and its officers, directors, and outside attorneys, goes beyond what is suspected to have happened in the *Al-Timimi* prosecution, making it even more likely that any civil or criminal proceedings involving AHIF will be impermissibly tainted by the government's obtaining and using monitored communications.

Pursuant to U.S. District Judge Walker's recent Order, the Government must take all steps to preserve all evidence relating to prior and ongoing monitoring of our communications

with plaintiff counsels' clients, including all information relating to the use or disclosures of those communications, which encompasses the date and recipients of each disclosure. *In re National Security Agency Telecommunications Records Litigation*, MDL No. 06-1791 VRW, 2007 WL 3306579, at *1 (N.D. Cal. Nov. 6, 2007). Moreover, the Government must suspend all destruction or alteration of such documents, whether pursuant to a records retention policy or any other reason, and must certify to the Court, pursuant to Rule 11, Fed. R. Civ. P., that the Government is maintaining all records pertaining to the surveillance or monitoring of counsel's communications with AHIF and its officers, directors, and outside attorneys. Id. at *2.3.[3] Therefore, plaintiffs respectfully request that the Court require defendants to confirm that the government is preserving all such evidence relating to prior and ongoing monitoring of plaintiffs' attorney-client communications, including the identity of all recipients of the reports of those communications, which communications they received, and the date(s) that they received those reports.

***Attorney Work Product Privilege***

The communications that counsel for plaintiffs have regarding their representation of AHIF and its current or former officers, directors, and outside counsel, including their legal memoranda and other documents reflecting their thought processes, are also protected under the attorney work product privilege.

The attorney work product privilege "protects written materials lawyers prepare 'in anticipation of litigation.'" *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (quoting Rule 26(b)(3), Fed. R. Civ. P.). The purpose of this privilege is to "ensur[e] that lawyers can prepare

---

[3] Because the AHIF wiretapping challenge was consolidated into MDL No. 06-1791, Judge Walker's order applies with full force to the Government's past and present surveillance of AHIF, its officers, directors, and attorneys.

Page 13 – MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials," thereby "protect[ing] the adversary process." *Id.* (citing *In re Sealed Case*, 107 F.3d 46, 51 (D.C. Cir. 1997)).  The U.S. Supreme Court, in the seminal *Hickman* decision, which originated this privilege, explained that:

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).  The Supreme Court further explained the need for this privilege in order for attorneys to provide effective representation to their clients:

> Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.  An attorney's thoughts, heretofore inviolate, would not be his own.  Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.  The effect on the legal profession would be demoralizing.  And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 511.  The work product privilege applies to "both criminal and civil cases." *In re Sealed Case*, 146 F.3d at 884 (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)).

Critically, the work product privilege applies even before specific claims are asserted by or against the client, as the D.C. Circuit held in rejecting the government's attempt to argue that the privilege should only apply after litigation has commenced:

> Here . . . the lawyer acted not as prosecutor or investigator, but rendered legal advice in order to protect the client from future litigation about a particular transaction, even though at the time, neither [agency] nor [third party] had made any specific claim. . . .
>
> . . . a contrary ruling would undermine lawyer effectiveness at a particularly critical stage of a legal representation.  It is often prior to the emergence of specific claims that lawyers are best equipped either to help clients avoid litigation or to strengthen available defenses should litigation occur. . . .  If lawyers had to wait for specific claims to arise before their writings could enjoy work-product protection, they would not likely risk taking notes about such matters or communicating in writing with colleagues, thus severely limiting their ability to advise clients effectively.

*In re Sealed Case*, 146 F.3d at 885-86.  Instead, all that is required is "a subjective belief that

litigation was a real possibility, and that belief must have been objectively reasonable." *Id.* at 884.

Here, plaintiff counsel's work product encompasses their notes, emails, drafts of legal pleadings and correspondence, documents reflecting legal opinions and legal strategies, and other legal advice, which they have good reason to believe is being shared with Department of Justice attorneys in the civil and criminal cases to which AHIF and Messrs. Sedaghaty and Al-Buthi are parties. Under *Hickman* and its progeny, plaintiff counsel's notes, memoranda, and related documents that reflect the attorneys' mental impressions, strategy, and legal theories, are protected under the work product privilege. This applies regardless of whether the work product was created or modified before or after specific claims were asserted by or against AHIF and its officers, directors, and outside attorneys, because counsel were not retained until *after* AHIF and two of its directors were sued in civil litigation (*Burnett*, *supra*), and all of their work product arises from (i) that civil litigation or the subsequent civil challenges to the OFAC designation and the warrantless surveillance, or (ii) from the pending criminal prosecution. Insofar as these documents and communications "represent the opinions, judgments, and thought processes of counsel," *In re Sealed Case*, 146 F.3d at 888, they are protected under the work product privilege, and the United States Government has no right of access to such work product, whether by electronic monitoring or any other means, or any right to use that work product.

***Attorneys' Fiduciary Duty to Their Clients***

Even broader than the attorney-client and work product privileges is the fiduciary duty of attorneys to their clients, including the duty to maintain the confidentiality of their communications, and the duty to provide effective representation by communicating with clients about the subject matter of the representation. *See* D.C. Bar Ethics Op. 288 (Feb. 16, 1999) ("the

Page 15 – MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

ethical obligation of the lawyer to take all necessary steps to protect client information is broader than the confines of the attorney-client privilege or the work product doctrine").

Attorneys have a non-waivable duty to "provide competent representation to a client." D.C. R. Prof. Conduct, Rule 1.1(a).  In order to do so, they must engage in "adequate preparation, and continuing attention to the needs of the representation to ensure that there is no neglect of such needs." *Id.* cmt. 5.  They are also required to keep their clients "reasonably informed about the status of a matter and promptly comply with reasonable requests for information," *see* Rule 1.4(a), which requires that they provide the client with "sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued." *Id.* cmt. 1. For that reason, "when transmitting a communication that includes information relating to the representation of a client, the lawyer must take reasonable precautions to prevent the information from coming into the hands of unintended recipients." *See* Rule 1.6 cmt. 40.

The fiduciary duties that attorneys owe to their clients, including the duties to maintain the confidentiality of communications and the need to keep clients fully informed as to the nature of the legal representation, are impermissibly impaired by the government's prior surveillance and the government's refusal to state whether monitoring continues to take place.  Further, plaintiff counsel's communications with co-counsel, who may have more frequent communications with Messrs. Sedaghaty and Al-Buthi, also are governed by these fiduciary duties.

In light of these unwarranted infringements on plaintiff counsel's fiduciary duties, the only possible means that they might use to communicate with their clients would be in-person meetings in rooms that have been carefully screened to ensure that there is no electronic

Page 16 – MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

monitoring. Since one client (Mr. Al-Buthi) is legally residing in Riyadh, Saudi Arabia, and is prohibited by his government from international travel for his own protection, and another client (Mr. Sedaghaty) is prohibited from free movement from Ashland, Oregon, this means that plaintiffs' counsel must incur the time and expense of travel to Ashland or Saudi Arabia every time confidential communication with the clients is required. This is an impermissible burden on plaintiff counsel's fiduciary duties.

Thus, plaintiff counsels' communications with their clients are also governed by their fiduciary duties to our clients, and the Government has not shown that national security concerns or the state secrets privilege (if applicable at all) are sufficient to outweigh our fiduciary duty to their clients. The conclusory statements in Ms. Gacki's November 2, 2007 letter (Exhibit 6 at 2) fail to recognize the fiduciary duty owed by all attorneys to their clients and do not justify the government's actions. The United States Government attorneys, through any likely use of past or ongoing monitoring of our communications with our clients, have improperly interfered with plaintiff counsels' fiduciary duties to their clients.

***The Sixth Amendment Right to Counsel***

Finally, the Sixth Amendment right to counsel, which overlaps with the attorney-client privilege, *supra*, provides another basis for preventing the government from continuing to monitor plaintiff counsel's communications with their clients or from making any use of prior surveillance against AHIF and its officers and directors in criminal proceedings. It is a matter of record that there is a pending criminal indictment against Messrs. Sedaghaty and Al-Buthi, No. 6:05-CR-60008 (D. Or.) (the indictment as to AHIF was dismissed without prejudice).

It is settled law that the communications between an attorney and his client cannot be monitored by the government in violation of the Sixth Amendment right to counsel. As the D.C.

Page 17 – MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Circuit held, such monitoring could not be used by the prosecution in a criminal proceeding:

> These cases unequivocally establish the principle that the two Amendments [Fifth and Sixth] guarantee to persons accused of crime the right privately to consult with counsel both before and during trial. This is a fundamental right which cannot be abridged, interfered with, or impinged upon in any manner. *The prosecution is not entitled to have a representative present to hear the conversations of accused and counsel. We consider it equally true that a defendant and his lawyer have a right to talk together by telephone without their conversations being monitored by the prosecution through a secret mechanical device which they do not know is being used.* It would not be an answer to say that the accused cannot complain of the interception of his telephone conversations with his counsel if he had on other occasions ample personal consultation with his lawyer, face to face, which no person overheard. That fact would not erase the blot of unconstitutionality from the act of intercepting other consultations.

*Coplon v. United States*, 191 F.2d 749, 759 (D.C. Cir. 1951) (emphasis added) (reversing and remanding for hearing on wiretapping issues).

Hence, the D.C. Circuit has recognized that one or more of the following four factors should be assessed to determine whether a Sixth Amendment violation arose from the government's monitoring of attorney-client communications:

> *Weatherford* and the appellate cases interpreting it have assessed several factors in determining whether a criminal defendant whose attorney-client deliberations have been ruptured by a covert government agent has shown the prejudice necessary to make out a Sixth Amendment violation. . . . (1) was evidence used at trial produced directly or indirectly by the intrusion; (2) was the intrusion by the government intentional; (3) did the prosecution receive otherwise confidential information about trial preparations or defense strategy as a result of the intrusion; and (4) were the overheard conversations and other information used in any other way to the substantial detriment of the defendant?

*United States v. Kelly*, 790 F.2d 130, 137 (D.C. Cir. 1986) (citing *Weatherford v. Bursey*, 429 U.S. 545, 554 (1977)). Here, the second factor is satisfied, given that the government intentionally monitored attorney-client communications with AHIF and its officers and directors, or, in the alternative, has refused to state whether such communications were or are still being monitored. The government has further refused to state whether it will make any use of such communications as part of the criminal proceeding, or whether it has provided that information to the prosecutors, or whether it will otherwise make use of that information to the detriment of

AHIF or Messrs. Sedaghaty and Al-Buthi – all this in the context of the government's own admission that it has used privileged and classified information as a basis for the designation by OFAC of AHIF and Mr. Al-Buthi, and that classified information presumably includes monitored communications. Hence, an evidentiary "hearing or other evidentiary process [is] needed to resolve disputed facts" as to the government's monitoring of attorney-client communications in violation of the Sixth Amendment right to counsel. *Id.* at 138 (reversible error to reject Sixth Amendment claim without holding evidentiary hearing).

If these Sixth Amendment violations of the right to counsel "'are so fundamental and pervasive that they require reversal [of a conviction] without regard to the facts or circumstances of the particular case,' the error is deemed prejudicial in every case." *Kelly*, 790 F.2d at 138 n.6 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)). Otherwise, the burden is still "on the government to prove, beyond a reasonable doubt, that the constitutional violation was not outcome determinative." *Id.*

Although the criminal prosecution of Mr. Sedaghaty has not yet progressed to the point where it is evident that the government will use the results of monitoring of attorney-client communications between Mr. Sedaghaty and his counsel, any such use would impermissibly violate his Sixth Amendment rights to counsel under *Van Arsdall*, *Kelly*, and their progeny.

### IV. CONCLUSION

It is not a state secret that the United States has been illegally intercepting communications involving American citizens located in the United States, and in this particular instance it has been established conclusively that the United States has illegally intercepted privileged attorney-client communications between counsel and their clients, and then used those communications against the clients to impose draconian sanctions. This conduct contravenes a

number of bedrock principles upon which the American legal system is based, including but not limited to (i) attorney-client privilege, (ii) attorney work product privilege, (iii) attorney's fiduciary duty of ethical conduct toward clients, and (iv) the Sixth Amendment right to effective assistance of counsel. When asked to state that the defendants were not engaging in such conduct, defendants categorically refused.

Plaintiffs and their counsel have the unqualified right to confidentiality in their professional relations. Defendants' past invasion of privileged communications has already inflicted enormous harm on plaintiffs, and their threat to continue those invasions has greatly hampered plaintiffs' counsel's ability to engage in the most basic legal services. Not only is defendants' conduct illegal, to the extent that attorneys participate in such conduct they open themselves to ethical sanctions.

For all of the foregoing reasons plaintiffs respectfully request that the Court issue a preliminary injunction prohibiting the United States from intercepting privileged communications between plaintiffs and their legal counsel or among plaintiffs' co-counsel.

Respectfully submitted this 24th day of January, 2008.

                                                                        /s/
Thomas H. Nelson, OSB No. 78315
J. Ashlee Albies, OSB No. 05184
David Cole, DC Bar No. 438355
Lynne Bernabei, DC Bar No. 938936
Alan Kabat, DC Bar No. 464258
Attorneys for Plaintiffs