IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

AL HARAMAIN ISLAMIC FOUNDATION,                )
INC., AND MULTICULTURAL ASSOCIATION            )
OF SOUTHERN OREGON,                             )
                                                )
                          Plaintiffs,           )        Civil Case No. 07-1155-KI
                                                )
           vs.                                  )        OPINION AND ORDER
                                                )
UNITED STATES DEPARTMENT OF THE                 )
TREASURY, HENRY M. PAULSON, JR.,                )
OFFICE OF FOREIGN ASSETS CONTROL,               )
ADAM J. SZUBIN, UNITED STATES                   )
DEPARTMENT OF JUSTICE, AND ALBERTO              )
R. GONZALES,                                    )
                                                )
                          Defendants.           )
_____     )

        Thomas H. Nelson
        P. O. Box 1211, 24525 E. Welches Road
        Welches, Oregon  97067

        J. Ashlee Albies
        205 S. E. Spokane Street, Suite 319
        Portland, Oregon  97202

Page 1 - OPINION AND ORDER

David D. Cole
c/o Georgtown University Law Center
600 New Jersey Avenue, N. W.
Washington, D. C.  20001

Lynne Bernabei
Alan R. Kabat
Bernabei & Wachtel, PLLC
1775 T Street, N. W.
Washington, D. C.  20009-7124

      Attorneys for Plaintiffs

Jeffrey S. Bucholtz
Carl J. Nichols
Joseph H. Hunt
Sandra M. Schraibman
Anthony J. Coppolino
Alexander K. Haas
U. S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N. W.
Washington, D. C.  20001

      Attorneys for Defendants

KING, Judge:

      Plaintiffs Al Haramain Islamic Foundation, Inc. ("AHIF") and Multicultural Association of Southern Oregon ("MASO") filed this action challenging the government's designation of AHIF as a terrorist organization.  Before the court is plaintiffs' Motion for Preliminary Injunction (#26).  For the following reasons, I deny the motion.

Page 2 - OPINION AND ORDER

## BACKGROUND

I.    Allegations in the Original and Supplemental Complaints

AHIF alleges that it is an Oregon non-profit charitable organization dedicated to promoting understanding of the Islamic religion.  The other plaintiff is MASO, a Medford organization charged with reducing racism and supporting multicultural education.

AHIF's claims arise out of the President's actions under the International Emergency Economic Powers Act ("IEEPA").  Pursuant to the IEEPA, the President may declare a national emergency as a result of "any unusual or extraordinary threat" and block the transfer of property in which "any foreign country or a national thereof has any interest, or with respect to any property, subject to the jurisdiction of the United States."  50 U.S.C. § 1702(a)(1)(B).  President Bush declared a national emergency on September 23, 2001, authorizing the Secretary of the Treasury to block transactions "to or for the benefit of" 27 individuals and entities listed in the Executive Order, as well as to designate other groups or individuals providing material support to one of them, or for being "otherwise associated" with one of them.  Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sep. 23, 2001).  The IEEPA allows the Secretary of the Treasury to freeze assets pending investigation, without providing notice and an opportunity to be heard to the affected group or individual.

AHIF alleges that on March 11, 2002, the United States identified Al Haramain-Somalia and Al Haramain-Bosnia as "Specially Designated Global Terrorists."  On January 22, 2004, the United States designated Al Haramain-Indonesia, Al Haramain-Kenya, Al Haramain-Tanzania, and Al Haramain-Pakistan.  AHIF alleges that Al Haramain Foundation-Saudia Arabia donated

money to AHIF, but the government never designated Al Haramain Foundation-Saudia Arabia as a terrorist organization.  AHIF alleges it never had any ties to any of the other designated entities.

AHIF alleges defendant Office of Foreign Assets Control ("OFAC") froze its assets and property on February 18, 2004, pending investigation.

On April 23, 2004, OFAC provided unclassified information that it said it was relying on in considering designating AHIF as a Specially Designated Global Terrorist, in addition to classified documents it did not disclose.  AHIF alleges the unclassified documents did not support a terrorist designation.

AHIF responded to OFAC's information, but alleges it was forced to speculate as to the reasons for the government's concern.  It thought two of its activities might be at issue: distribution of Korans to prisoners and others, and participation in a fundraising project for Chechen refugees.  OFAC mailed a supplemental record on July 26, 2004.  AHIF objected to the inclusion of documents related to Al Haramain Foundation-Saudia Arabia because AHIF had no control over it, and the inclusion of documents related to other Al Haramain organizations overseas because AHIF had no relationship with them.  AHIF also provided documentation supporting its contention that its humanitarian efforts in Chechnya were supported by the Russian government.

OFAC provided yet another supplement to the administrative record, and included in this supplement was a document labeled TOP SECRET.

On September 9, 2004, OFAC identified AHIF, as well as AHIF's director Soliman Al-Buthe,[1] as Specially Designated Global Terrorists.  A press release indicated that the designation was based on "direct links" between the organization and Osama bin Laden.

Plaintiffs allege that the TOP SECRET document contains communications on which the press release may have been based, but which AHIF contends were misunderstood by the government.

Plaintiffs filed a Supplemental Complaint after receiving information from the government that AHIF had been "redesignated."  The "redesignation" process began on November 14, 2007, when OFAC told AHIF and Al-Buthe that it was considering redesignating them.  The government provided several packets of unclassified documents, including translations of Russian and Arabic newspapers from 2000 to 2004, that had not been produced earlier.  AHIF objected to the proposed redesignation.

In its February 6, 2008 letter, OFAC redesignated AHIF.  OFAC informed AHIF it had not relied on the TOP SECRET document as a basis for redesignating AHIF, and the document is not part of the administrative record in this case.  In addition, OFAC said AHIF was not being identified as a terrorist organization because of AHIF's distribution of literature.  Rather, it stated that AHIF was "owned or controlled" by Al-Buthe and Aqeel Al-Aqeel (the former director of Al Haramain-Saudi Arabia), and acted on behalf of Al Haramain-Saudi Arabia.  OFAC described Al Haramain-Saudi Arabia as "an international charity that employed its branch offices to provide

---

[1]In their original Complaint, plaintiffs spell his name "Al-Buthi," but in their Supplemental Complaint, they spell it "Al-Buthe."  The government's criminal indictment charges "Soliman Hamd Al-Buthe."  See United States v. Al-Haramain Islamic Foundation, Inc., et al, No. CR 05-60008-HO.  I use "Al-Buthe" except where materials from which I quote use "Al-Buthi."

financial, material, and other services and support to al Qaida and other" Specially Designated

Terrorist Organizations. Supplemental Compl. at ¶ 10. OFAC also stated that Al Haramain-

Saudi Arabia provided support for the 1998 bombings of the United States Embassies in Kenya

and Tanzania. AHIF contests these conclusions.

In light of the redesignation, plaintiffs' claims are as follows: (i) the designation and

redesignation were not supported by substantial evidence because OFAC's administrative record

contains no evidence AHIF engaged in or supported terrorist activity; (ii) the blocking of assets,

designation, and redesignation violated AHIF's Fifth Amendment right to due process because it

did not have adequate notice and the government did not explain its decision; (iii) OFAC's

refusal to allow payment to lawyers out of the frozen assets violates due process; (iv) the

designation and redesignation were based on the TOP SECRET document or other undisclosed

attorney-client communications, violating the Fifth Amendment; (v) the designation and

redesignation violated AHIF's First Amendment rights; (vi) the designation criteria are

unconstitutionally vague and overbroad; (vii) the designation and redesignation punishes AHIF

for associations and conduct without proof; and (viii) the seizure of assets and property violated

the Fourth Amendment.

Finally, in counts nine and ten, plaintiff MASO alleges that its inability to advocate on

behalf of AHIF violates its First and Fifth Amendment rights.

II.    Related Litigation

As described above, plaintiffs allege that OFAC relied on a TOP SECRET document that

plaintiffs claim contains attorney-client privileged communications. That document was integral

to a separate lawsuit that plaintiffs AHIF and its attorneys filed in February of 2006, against

George W. Bush, the National Security Agency, OFAC, the Federal Bureau of Investigation, and respective agency directors, challenging the Terrorist Surveillance Program ("TSP"). Along with their Complaint in that lawsuit, plaintiffs filed the TOP SECRET document under seal with the Court. The document was one that OFAC had inadvertently disclosed to AHIF's counsel in late August 2004 as part of a production of unclassified documents relating to AHIF's potential status as a Specially Designated Global Terrorist. I referred to this document as the "Sealed Document" in my Opinion and Order on the government's Motion to Dismiss or, in the Alternative, for Summary Judgment.

In my Opinion and Order on the government's motion, I found the Sealed Document was protected from disclosure by the state secrets privilege. Al-Haramain Islamic Foundation, Inc. v. Bush, 451 F. Supp. 2d 1215, 1223 (D. Or. 2006). I also concluded that "forcing the government to confirm or deny whether plaintiffs' communications have been or continue to be intercepted, other than any communications contained in the Sealed Document" would create a reasonable danger of harming national security. Id. at 1224. Nevertheless, I determined that any surveillance event or events contained in the Sealed Document could be confirmed or denied without harming national security, if no other information was revealed. As a result, I denied the government's motions with leave to renew because I wanted plaintiffs to have an opportunity to "file in camera any affidavits attesting to the contents of the document from their memories to support their standing in this case and to make a prima facie case." Id. at 1229.

I certified the Opinion and Order for immediate appeal. After my decision on the applicability of the state secrets privilege, the case was transferred by the Multi-District Litigation panel to Chief Judge Vaughn Walker of the Northern District of California. Al-

Haramain Islamic Foundation, Inc. v. Bush, Civ. No. 07-109-VRW and MDL No. 06-1791 VRW
(N.D. Cal.).

　　　　The government appealed my Opinion and Order.  The Ninth Circuit affirmed in part,
reversed in part and remanded the case to Judge Walker.  The Ninth Circuit concluded that my
approach was a "commendable effort to thread the needle" but was "contrary to established
Supreme Court precedent."  Al-Haramain Islamic Foundation, Inc. v. Bush, 507 F.3d 1190, 1204
(9th Cir. 2007).  The Ninth Circuit concluded that the Sealed Document is protected by the state
secrets privilege, "along with the information as to whether the government surveilled Al-
Haramain."  Id. at 1203.  Specifically, "the Sealed Document, its contents, and any individuals'
memories of its contents, even well-reasoned speculation as to its contents, are completely barred
from further disclosure in this litigation by the common law state secrets privilege."  Id. at 1204-
05.  Plaintiffs conceded that, without the Sealed Document, they could not establish standing to
challenge the TSP, and the court noted it was "not sufficient for Al-Haramain to speculate that it
might be subject to surveillance under the TSP simply because it has been designated a
'Specially Designated Global Terrorist.'"  Id. at 1205.

　　　　The Ninth Circuit remanded to Judge Walker to consider whether the Foreign Intelligence
Surveillance Act preempted the state secrets privilege.  That issue is currently pending before
Judge Walker.

III.　　Allegations to Support Plaintiffs' Motion for Preliminary Injunction

　　　　Plaintiffs seek a preliminary injunction to prohibit the government and its counsel from
(i) engaging in or participating in the interception of privileged attorney-client communications
and privileged attorney-attorney consultations and communications regarding the subject matter

of this litigation; and (ii) using in this litigation or elsewhere any privileged attorney-client communications and privileged attorney-attorney consultations and communications regarding the subject matter of this litigation.

Plaintiffs requested an evidentiary hearing to present witness testimony to support their motion for preliminary injunction. I declined to hold a hearing until I resolved the threshold issues raised by the government. Accordingly, the following allegations are taken from plaintiffs' memorandum in support of their motion.

Plaintiffs submit that Anthony Coppolino, a government attorney, said that lawyers who represent suspected terrorists "come closer to being in the ballpark of the terrorist surveillance program" during the oral argument in the case of American Civil Liberties Union v. National Sec. Agency, 438 F. Supp. 2d 754 (E.D. Mich. 2006). Pls.' Ex. 4, Adam Liptak, *Arguments on Spy Program are Heard by Federal Judge*, N.Y. Times, June 13, 2006.

Additionally, Lynne Bernabei, an attorney who represents plaintiffs here, wrote a letter to the government's attorney, Andrea Gacki, asking for confirmation that neither her clients nor their attorneys' communications were being monitored. Gacki responded that the government "cannot publicly confirm or deny whether your clients' communications are being intercepted by classified means." Pls.' Ex. 6.

Plaintiffs allude to the Sealed Document, or documents summarizing the contents of the Sealed Document, throughout their memoranda. For example, they assert AHIF was identified as a Specially Designated Global Terrorist as a result of "the United States government's warrantless interception" of communications, and that AHIF's counsel has been concerned "[s]ince the government's warrantless wiretapping . . . was first revealed in 2004." Pls.' Mem. in

Page 9 - OPINION AND ORDER

Supp. of Mot. for Prelim. Inj. at 3, 4.  They ask me to enjoin the government from using

information obtained through any surveillance "remembering that the illegally intercepted . . .

communications reflected in the Document were used for the purpose of imposing sanctions on

AHIF and Mr. Al-Buthi."  Id. at 11.  Plaintiffs contend their attorneys' ability to implement their

fiduciary duty is impaired "by the government's prior surveillance."  Id. at 16.  Plaintiffs

characterize the communications reflected in the Sealed Document as attorney-client privileged

communications.

Plaintiffs state that "as a result of the foregoing" they have a "reasonable suspicion that

defendants and those associated with and representing defendants are monitoring their privileged

communications."  Id. at 6.  Plaintiffs also claim to have "good reason to believe" that their

notes, emails, drafts, and strategies are "being shared with Department of Justice attorneys in the

civil and criminal cases to which AHIF and Messrs. [Pirouz] Sedaghaty and Al-Buthi are

parties."  Id. at 15.

At oral argument, plaintiff's counsel summarized two other events that they think indicate

their communications have been or are being intercepted.  The first was that plaintiffs' counsel

had multiple discussions by e-mail between themselves about filing a complaint against OFAC to

address its long delay in issuing a license.  The license was subsequently granted.  The second

instance involved a series of strategy discussions between plaintiffs' counsel by e-mail.  Right

after those discussions the Justice Department took a position on the issue when it had not done

so for several years.

Plaintiffs contend that as a result of the government's past actions, and its position

presently, plaintiffs' counsel are "reluctant" to use electronic communications to discuss

confidential information or litigation strategy.  Id. at 6.  If counsel need to discuss such matters

with AHIF, counsel need to travel to Ashland, or take an expensive and lengthy 36-hour trip (one

way) to Saudi Arabia.  In addition, face-to-face meetings between counsel are expensive since

counsel are not located in the same city.  Counsel state that the "only possible means that they

might use to communicate with their clients would be in-person meetings in rooms that have

been carefully screened to ensure that there is no electronic monitoring."  Id. at 16-17.

## DISCUSSION

I.    Plaintiffs' Motion for an Injunction to Stop Surveillance is Beyond the Scope of the
      Complaints

A "preliminary injunction is always appropriate to grant intermediate relief of the same

character as that which may be granted finally."  De Beers Consol. Mines v. U.S., 325 U.S. 212,

220 (1945).  After reviewing the motion for preliminary injunction and the original and

Supplemental Complaints, I conclude that although plaintiffs frame their motion as one for

preliminary relief, plaintiffs' request that I enjoin the government from intercepting

communications is not preliminary to any decision on the merits.

In their original and Supplemental Complaints, plaintiffs challenge OFAC's designation

and redesignation decisions, the process by which the designations were made, the standards

under which the designations were made, the freezing of AHIF's assets, and the seizure of

AHIF's records.  Plaintiffs seek an order vacating the designation and redesignation, a

declaration that the IEEPA, Executive Order and associated regulations are unconstitutional, an

injunction to prohibit the government from punishing plaintiffs for AHIF's lawful activities, an

order requiring the release of AHIF's funds and property, and attorneys' fees under the Equal Access to Justice Act.

In contrast, in their motion for preliminary injunction, plaintiffs seek an order enjoining the government from engaging in or participating in the interception of privileged attorney-client communications and privileged attorney-attorney consultations and communications regarding the subject matter of this litigation.[2]

Plaintiffs' request for an order enjoining the government from intercepting communications is not for "relief of the same character as that which may be granted finally." See De Beers, 325 U.S. at 220. Plaintiffs do not challenge in their original or Supplemental Complaint the government's legal authority to engage in surveillance of them, and do not request declaratory or injunctive relief regarding any such surveillance. As a result, plaintiffs seek an injunction on matters "lying wholly outside the issues in the suit" and "no decision of the suit on the merits can redress any injury done by [such an] order." See id. at 217.

Moreover, as the government points out, plaintiffs are currently in the midst of challenging the government's authority to engage in surveillance of them in another lawsuit. In Al-Haramain v. Bush, plaintiffs AHIF, Wendell Belew, and Asim Ghafoor are challenging the legality of warrantless electronic surveillance. Importantly, in that case, plaintiffs allege that in March and April 2004 the NSA engaged in warrantless electronic surveillance between a director

---

[2]Plaintiffs also request an injunction that *government counsel* be enjoined from engaging in or participating in the interception of privileged attorney-client communications. I deal with that request in Part III of this Opinion and Order.

or directors of AHIF and its attorneys, Belew and Ghafoor, in violation of AHIF's Sixth

Amendment right to counsel.  That litigation is currently pending before Judge Walker.[3]

Based on the foregoing, I deny plaintiffs' motion for an order enjoining the government

from engaging in or participating in the interception of privileged attorney-client

communications and privileged attorney-attorney consultations and communications regarding

the subject matter of this litigation.

II.    Plaintiffs' Request to Prohibit the Use of Intercepted Material in OFAC's Designation and Redesignation Decisions is not the Proper Subject of a Motion for Preliminary Injunction

Plaintiffs also request an injunction prohibiting the government from using in this

litigation any privileged attorney-client communications and privileged attorney-attorney

consultations and communications.[4]  In contrast to their request above, plaintiffs have alleged a

claim directed at the government using attorney-client privileged materials in its designation and

redesignation decisions.  The claim reads as follows:

**COUNT IV    THE DESIGNATION AND REDESIGNATION OF AHIF WAS BASED ON INTERFERENCE WITH PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS, AND THEREFORE VIOLATES DUE PROCESS.**

22.    Plaintiffs incorporate as though restated herein each of the allegations in the original Complaint and stated in paragraphs 1 through 15 above[.]

---

[3]To the extent plaintiffs' motion is directed at surveillance that took place subsequent to the cessation of the TSP in January of 2007, plaintiffs' motion is beyond the scope of any claims they raise in their original and Supplemental Complaints.

[4]Plaintiffs also request that *government counsel* be prohibited from using in this litigation privileged attorney-client communications.  I deal with this request in Part III of the Opinion and Order.

Page 13 - OPINION AND ORDER

23.    The classified document disclosed to AHIF's counsel reflected illegal
interference in a privileged attorney-client communication, and to the extent that
the designation and redesignation were based on that interference or other
undisclosed interferences, such interferences violate the Fifth Amendment
guarantee of due process.

Supplemental Compl. at 8.

Plaintiffs argue that it was not until two weeks after they filed their Motion for

Preliminary Injunction that the government announced it would not include the Sealed Document

in the administrative record in making the redesignation decision.  More importantly, according

to plaintiffs, the government has not stated that it has excluded other, similarly obtained

information from the record.  Plaintiffs assert the Sealed Document is just "the tip of the

iceberg," and that all such documents should be excluded from the administrative record.

A motion for an injunction, however, is not the proper platform to challenge material

currently contained in the administrative record on which the government already made its

designation and redesignation decisions.  Plaintiffs will have the chance to challenge the

unclassified evidence the government used in the designation process.  Any concerns I have

about the classified record will also be addressed at the merits stage of this litigation.  The

inclusion of such evidence will not cause plaintiffs irreparable harm if it is not enjoined

immediately.  See Committee of Central American Refugees v. I.N.S., 795 F.2d 1434, 1442 (9th

Cir. 1986) (plaintiffs failed to show they "would suffer irreparable harm to a protectible

constitutional right or statutory privilege if their requests for preliminary injunctions were

denied").  In short, an injunction is not the appropriate way of resolving any issues plaintiffs have

with the contents of the administrative record.

Page 14 - OPINION AND ORDER

III.    <u>Plaintiffs' Request to Protect the Process of this Litigation is not Warranted at this Time</u>

Plaintiffs seek an order enjoining the government's *counsel* from engaging in or participating in the interception of privileged attorney-client communications, and to stop the government's *counsel* from using such communications against plaintiffs "whether as part of the OFAC designation, or any other purpose."  Pls.' Reply at 15.  Plaintiffs' counsel clarified at oral argument that they are trying to effectively represent their clients in a fair process, and request the court's assistance in protecting that process.

As an initial matter, plaintiffs suggest that intercepted communications are being used in the criminal prosecution of Sedaghaty and Al-Buthe, in <u>United States v. Al-Haramain Islamic Foundation, Inc., et al</u>, No. CR 05-60008-HO, a case pending before Judge Michael R. Hogan, and in the government's defense of AHIF's lawsuit challenging the TSP.  Plaintiffs further argue that such communications "cannot form the basis for any civil, criminal, or administrative action taken or proposed to be taken against AHIF and its officers, directors, and outside attorneys." Pls.' Mem. in Supp. at 11-12.

Plaintiffs' allegations that government counsel have been monitoring attorney-client communications and work product in the civil case before Judge Walker and the criminal proceeding before Judge Hogan are not relevant to this litigation.  The appropriate venue for such allegations are in those courts.

With respect to the litigation before me, however, I agree with plaintiffs that I have authority to control the process of this litigation.  Plaintiffs have cited no precedent for this proposition, but it is generally understood that "district courts are free to regulate the conduct of lawyers appearing before them." <u>Paul E. Iacono Structural Eng'r, Inc. v. Humphrey</u>, 722 F.2d

435, 439 (9th Cir. 1983) (considering disqualification of attorney appearing before it); see also

Chambers v. NASCO, Inc., 501 U.S. 32, 44-45, reh'g denied, 501 U.S. 1269 (1991) (describing

inherent power of court, and particularly "the ability to fashion an appropriate sanction for

conduct which abuses the judicial process"); Local Rule 83.7 (attorneys practicing in federal

court must comply with Oregon Rules of Professional Conduct); Form 23 (Statement of

Professionalism); and Oregon Rule of Professional Conduct 1.6 (confidentiality of information).

Plaintiffs, however, have provided no evidence that government attorneys are monitoring

or are using privileged communications in this litigation.  The Ninth Circuit has foreclosed

plaintiffs' use of the Sealed Document to prove the purported surveillance of their

communications.  The Ninth Circuit has held the Sealed Document, and any information as to

whether the government monitored AHIF's communications, is protected by the state secrets

privilege.  In addition, plaintiffs are not permitted to rely on any "material touching upon" the

Sealed Document, which includes their memories.  Al-Haramain v. Bush, 507 F.3d at 1204.

The fact that AHIF has been designated a Specially Designated Terrorist Organization,

the very sort of entity the TSP seemed to target, is not sufficient to find that AHIF's

communications are being intercepted, as the Ninth Circuit noted.  Id. at 1205.  It follows, then,

that Coppolino's statement, that attorneys who represent suspected terrorists may fall within the

reach of the TSP, is also not sufficient to show plaintiffs' counsel's communications are being

monitored.  In addition, comments made by the Ninth Circuit do not "confirm that plaintiffs'

attorney-client communications have been monitored by the government," as plaintiffs argue.

See Pls.' Reply at 12-13 (quoting Ninth Circuit that "Al-Haramain has seen the Sealed Document

and believes that its members were subject to surveillance," "Al-Haramain unwittingly knows the

contents of the Sealed Document," and "It is no secret that the Sealed Document has something

to do with intelligence activities." <u>Al-Haramain v. Bush</u>, 507 F.3d at 1202, 1203).

Plaintiffs suggest that they can rely on government counsel's refusal to confirm or deny

whether AHIF's or MASO's communications are being intercepted or used, but I disagree.

Government counsel's refusal to confirm or deny plaintiffs' suspicion does not imply that

counsel have access to confidential communications, it merely reflects the government's need to

give a consistent response lest differing responses lead to the disclosure of state secrets.

Furthermore, I understand government counsel's refusal to explicitly deny plaintiffs' accusations

where plaintiffs may glean that they are or are not subject to surveillance by comparing the

positions government counsel take in different cases.  For example, government counsel may

insist in one case that they do not have access to confidential communications, while in another

request the opportunity to submit an *in camera* and *ex parte* explanation about their practices,

thereby giving plaintiffs a glimpse of their status as a surveillance target.

Finally, one of the two events described by plaintiffs' counsel at oral argument did not

involve government counsel and, without more detail, the other event appeared to me to be

coincidental.

Nevertheless, as I stated at the oral argument on this motion, government counsel should

not have access to attorney-client privileged communications or use such communications in this

litigation.  Plaintiffs' counsel have an obligation to protect the confidential communications of

their clients, and the evidentiary privileges protecting disclosure of attorney-client

communications and attorney work product ensure plaintiffs have meaningful access to the

courts.  See <u>Al Odah v. United States</u>, 346 F. Supp. 2d 1, 10-11 (D.D.C. 2004) (describing

privileges as necessary to obtain effective assistance of counsel). Government counsel have assured plaintiffs and me that they "understand and take seriously their ethical obligations." Ds.' Opp'n. at 22. Government counsel have also informed me that they believe they have acted with integrity and would be willing to provide any assurance necessary *in camera* and *ex parte*. Although I do not think such efforts are warranted at this time, I may consider it in the future.

If plaintiffs have information that would indicate government counsel have access to confidential attorney-client communications or work product in this case, they may move to renew their motion. Such a motion should specify the relief requested, and cite any relevant authority supporting their request. If plaintiffs are unable to divulge the information on the record, without further revealing attorney-client communications, plaintiffs may seek an order permitting such declarations to be filed *in camera* and *ex parte*.

IV.    An Order to Preserve the Evidence is Not Necessary at this Time

Plaintiffs move for an order requiring the government and their counsel to confirm that the government is preserving all evidence relating to prior and ongoing monitoring of plaintiffs' attorney-client communications, including the identity of all recipients of the reports of those communications, which communications they received, and the date(s) that they received those reports.

Preservation orders are granted only if the seeker "demonstrate[s that the order] is necessary and not unduly burdensome." Pueblo of Laguna v. United States, 60 Fed. Cl. 133, 138 (Fed. Cl. 2004). Judge Walker has ordered the parties to preserve evidence "[u]ntil the issues in these proceedings can be further refined in light of the guidance and directives anticipated to be received upon appellate review of the court's decision in Hepting v. AT&T Corporation, 439 F.

Page 18 - OPINION AND ORDER

Supp. 2d 974 (N.D. Cal. 2006) and of the Oregon district court's decision in <u>Al-Haramain</u>

<u>Islamic Foundation, Inc. v. Bush</u>, 451 F. Supp. 2d 1215 (D. Or. 2006)[.]"  Ex 1 to Ds.' Opp'n.

Pursuant to the order, government counsel submitted a certification under seal responding to

Judge Walker's directive.  Judge Walker ordered that the government discuss with its agencies

their practices for destroying documents and data, and have the agencies stop any business

practices of destroying such information, sequester such information, or preserve a complete

copy of such information.

        At oral argument, plaintiffs articulated their concern that Judge Walker's order applies

only to any surveillance that occurred during the pendency of that case, and is not applicable to

any current surveillance that may be occurring.  Since the claims in plaintiffs' original and

Supplemental Complaints are directed at the government's designation of AHIF and not to any

current surveillance the government may be undertaking, a preservation order is not "necessary"

in this case.  If plaintiffs renew their motion, pursuant to Part III of this Opinion and Order,

plaintiffs may reapply for a preservation order to preserve materials that government counsel may

possess.  Accordingly, I deny plaintiffs' request at this time.

<strong>CONCLUSION</strong>

        For the foregoing reasons, plaintiffs' Motion for Preliminary Injunction (#26) is denied.

IT IS SO ORDERED.

Dated this _____5th_____ day of June, 2008.


                                        __/s/ Garr M. King_____
                                        Garr M. King
                                        United States District Judge


Page 19 - OPINION AND ORDER