Thomas H. Nelson, OSB No. 78315 (nelson@thnelson.com)
P.O. Box 1211, 24525 E. Welches Road
Welches, OR  97067
Telephone: 503.622.3123; Fax: 503.622.1438

J. Ashlee Albies, OSB No. 05184 (Ashlee@sstcr.com)
Steenson, Schumann, Tewksbury, Creighton & Rose, P.C.
815 SW Second Avenue, Suite 500
Portland, OR  97204
Telephone: 503.221.1791; Fax: 503.223.1516

David D. Cole, DC Bar No. 438355 (Cole@law.georgetown.edu)
c/o Georgetown University Law Center
600 New Jersey Avenue N.W.
Washington, D.C. 20001
Telephone: 202.662.9078

Lynne Bernabei, DC Bar No. 938936 (Bernabei@bernabeipllc.com)
Alan R. Kabat, DC Bar No. 464258 (Kabat@bernabeipllc.com)
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
Telephone: 202.745.1942; Fax: 202.745.2627

Counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| Al Haramain Islamic Foundation, Inc., *et al.*, | Case No. 07-CV-1155-KI |
| Plaintiffs, | |
| v. | Plaintiffs' Reply Brief in Support of Plaintiffs' Supplemental Memorandum |
| United States Department of the Treasury, *et al.*, | |
| Defendants. | |

**Table of Contents**

INTRODUCTION . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 2

I.    DEFENDANTS HAVE FAILED TO ESTABLISH THAT THEIR VIOLATION
      OF AHIF'S DUE PROCESS RIGHTS WAS HARMLESS BEYOND A
      REASONABLE DOUBT . . . . . . . 2

      A.  The Failure to Provide Notice of the Legal and Factual Bases for
          Designation and Redesignation in Time for AHIF to Respond is a
          Structural Defect Defying Harmless Error Analysis . . . 4

      B.  Defendants Have Not Established That the Failure to Provide Notice was
          Harmless Beyond a Reasonable Doubt . . . . 5

      C.  The Information That OFAC Disclosed Did Not Provide AHIF
          Adequate Notice of the Factual and Legal Bases for Its Designation
          and Redesignation . . . . . . . 7

II.   DEFENDANTS' FREEZE OF AHIF-OREGON'S ASSETS FOR MORE
      THAN FIVE YEARS WITHOUT PROBABLE CAUSE OR A WARRANT
      IS AN UNREASONABLE SEIZURE IN VIOLATION OF THE FOURTH
      AMENDMENT . . . . . . . . 13

      A.  The Freeze is a Seizure, and Defendants Cite No Historical Evidence
          to the Contrary . . . . . . 14

      B.  Blocking Actions are Not *Per Se* Reasonable . . . 16

      C.  The Freeze of AHIF-Oregon's Assets Is Not Reasonable Under
          Special Needs or Any Other Fourth Amendment Doctrine . . 17

          1.  Neither a Warrant Nor Probable Cause Is Impracticable . . 18

          2.  The Intrusion on Property Effectuated Here Is in No Sense Minimal 20

III.  THE COURT SHOULD ORDER OFAC TO AUTHORIZE AHIF TO PAY
      ALL ATTORNEY FEES REASONABLY INCURRED IN CHALLENGING
      ITS DESIGNATION AND REDESIGNATION . . . . 23

CONCLUSION . . . . . . . . . 26

**Table of Authorities**

*Al Haramain Islamic Foundation, Inc. v. U.S. Dept of Treasury ("AHIF"),*
      585 F. Supp. 2d 1233 (D. Or. 2008) . . . . . . . *passim*

*Bivens v. Six Unknown Fed. Narcotics Agents,*
      403 U.S. 388 (1971) . . . . . . . . 22

*Donovan v. Dewey,*
      452 U.S. 594 (1981) . . . . . . . . 22

*Griffin v. Wisconsin,*
      483 U.S. 868 (1987) . . . . . . . . 18

*Henderson v. City of Simi Valley,*
      305 F.3d 1052 (9th Cir. 2002) . . . . . . . 20

*Henry v. United States,*
      361 U.S. 98 (1959) . . . . . . . . 21

*Holy Land Found. v. O'Neill,*
      219 F. Supp. 2d 57 (D.D.C. 2002) . . . . . . . 15

*In re Sealed Case No. 02-001,*
      310 F.3d 717 (U.S. Foreign Intell. Surveil. Ct. Rev. 2002) . . . 15

*Islamic American Relief Agency v. Unidentified FBI Agents,*
      394 F. Supp. 2d 34 (D.D.C. 2005) . . . . . . . 15

*M.L. v. Federal Way Sch. Dist.,*
      394 F.3d 634 (9th Cir. 2005) . . . . . . . 3

*New Jersey v. T.L.O.,*
      460 U.S. 325 (1985) . . . . . . . . 21

*New York v. Burger,*
      482 U.S. 691 (1987) . . . . . . . . 22

*Richards v. Wisconsin,*
      520 U.S. 385 (1997) . . . . . . . . 19

*United States v. Black,*
      466 F.3d 1143 (9th Cir. 2006), *amended by* 482 F.3d 1035 (9th Cir. 2007),
      *cert. denied*, 128 S. Ct. 612 (2007) . . . . . . . 19

*United States v. Carneiro*,
    861 F.2d 1171 (9th Cir. 1988) . . . . . . . 15

*United States v. Delgado*,
    545 F.3d 1195 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1383 (2009) . 13

*United States v. Jeffers*,
    342 U.S. 48 (1951) . . . . . . . . 18

*United States v. Knights*,
    534 U.S. 112 (2001) . . . . . . . . 21

*United States v. Montoya De Hernandez,*
    473 U.S. 531 (1985) . . . . . . . . 17

*United States v. Place*,
    462 U.S. 696 (1983) . . . . . . . . 15-16, 20

*United States v. Ramsey,*
    431 U.S. 606 (1977) . . . . . . . . 16

*United States v. Scott*,
    450 F.3d 863 (9th Cir. 2006) . . . . . . . 20, 21

*Wong Sun v. United States*,
    371 U.S. 471 (1963) . . . . . . . . 18

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) . . . . . . . . 15

**Statutes, Rules, and Executive Orders:**

Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 . . . . 24

Exec. Order 13224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) . . . . 11-17

Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801, *et seq.* . . . 18

International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.* 17

Rule 59(e), Federal Rules of Civil Procedure . . . . . 1

**INTRODUCTION**

In its November 2008 decision, this Court ruled that: (1) defendants had violated plaintiff Al Haramain Islamic Foundation's (AHIF or AHIF-Oregon) due process rights by failing to inform it of the basis for its designation and redesignation at a time when AHIF could respond; (2) defendants' freezing of AHIF's assets constitutes a "seizure" requiring Fourth Amendment scrutiny; and (3) defendants' caps on AHIF's access to its own resources to pay attorneys' fees and costs incurred in challenging OFAC's actions were arbitrary and capricious.  The Court requested further briefing on:  (1) whether the due process violation was "harmless beyond a reasonable doubt;" (2) whether OFAC's seizure of AHIF's assets was justified under the Fourth Amendment, and if not, what remedy is appropriate; and (3) what remedy is appropriate on the attorneys' fees issue.

Defendants' supplemental memorandum inappropriately seeks to reargue each of the Court's initial holdings – even though defendants never filed a motion for reconsideration.[1] They disingenuously mischaracterize this Court's decision to argue that the due process violation was limited to the initial designation, and was subsequently cured in connection with the redesignation process.  In fact, this Court found that OFAC failed to provide notice in advance of *both* the designation and redesignation, and first disclosed the bases for its actions in February 2008, when both the designation and redesignation processes were complete, and it was too late for AHIF to respond.  Accordingly, the failure to provide notice was not corrected, and cannot be deemed harmless, as it left AHIF not knowing what to respond to.  The Court should not only vacate the designation and redesignation until AHIF is afforded a meaningful opportunity to

---

[1] Under Fed. R. Civ. P. Rule 59(e), a motion to alter or amend the judgment must be filed within 10 days of judgment.  Had defendants requested reconsideration in their supplemental memorandum, their request would be untimely.  They should not be permitted to evade the requirements of the Federal Rules of Civil Procedure by smuggling such arguments for reconsideration into supplemental briefing.  In any event, as we demonstrate, defendants' arguments are meritless.

respond, but should also vacate as premature its prior determination that the record supported

AHIF's redesignation, as that record was fatally incomplete without AHIF having an opportunity

to respond to what was at issue.

With respect to the Fourth Amendment, defendants repeat their contention, already

rejected, that freezing the entirety of AHIF's assets for more than five years does not constitute a

seizure in violation of the Fourth Amendment.  They alternatively argue that blocking orders

should be deemed *per se* reasonable, which would have the same effect of rendering the Fourth

Amendment entirely irrelevant.  And they argue that their actions are permissible under the

"special needs" exception, but fail to meet their burden of demonstrating that any "special needs"

render the warrant and probable cause requirements impracticable, or that the legal scheme is

minimally intrusive and contains adequate alternative checks on executive discretion.

Finally, defendants reargue their contention, also already rejected by the Court, that the

restriction on AHIF's use of its own funds to pay reasonable attorneys' fees and costs was

appropriate.  As we show below, none of defendants' arguments has merit.

## ARGUMENT

**I.    DEFENDANTS HAVE FAILED TO ESTABLISH THAT THEIR VIOLATION OF AHIF'S DUE PROCESS RIGHTS WAS HARMLESS BEYOND A REASONABLE DOUBT**

This Court found that defendants violated AHIF's due process rights by failing to provide

it with notice of the factual and legal bases for its designation and redesignation.  *Al Haramain*

*Islamic Foundation, Inc. v. U.S. Dept. of Treasury ("AHIF")*, 585 F. Supp. 2d 1233, 1254-57 (D.

Or. 2008).  In fact, the Court found that what minimal notice OFAC did provide was

affirmatively misleading, and led AHIF to defend charges that proved irrelevant in the end, while

failing to inform it of any of the charges that proved dispositive.  *Id.* at 1255-57.  Moreover, the

Court found that AHIF did not learn of the actual bases for its redesignation until February 2008, *id.* at 1256, at which point the administrative record was closed, and AHIF had no further opportunity to respond. To establish that such a fundamental violation of due process was harmless, defendants must show beyond a reasonable doubt that even if AHIF had been afforded an opportunity to defend itself against the charges that formed the basis of its designation and redesignation, it could not possibly have affected the result. In other words, they must show – beyond a reasonable doubt – that there was literally nothing AHIF could have done in its defense that might have made a difference. Defendants have not met that burden.

Defendants' argument that their violation of AHIF's due process rights was harmless turns on two fundamental errors: (1) a misunderstanding of the "structural error" principle in harmless error doctrine; and (2) a disingenuous misreading of this Court's decision.

First, defendants argue that their due process violation was not a "structural error" because that label is purportedly assigned only to "the most serious constitutional violations." Def. Supp. Mem. at 4. But whether a violation is structural does not turn on some subjective assessment of how "serious" the violation is, but rather on whether it is the kind of error that infects the entire proceeding, and therefore defies "harmless error" analysis. Failure to inform a party of the factual and legal charges at issue is precisely such a structural error, as it "permeate[s] the entire conduct of the [proceeding]." *M.L. v. Federal Way Sch. Dist.*, 394 F.3d 634, 646 (9th Cir. 2005). Where, as here, AHIF did not even know what was at issue during either the designation or the redesignation, one cannot possibly reconstruct what the proceeding would have looked like had it known.

Second, defendants misconstrue this Court's decision. They claim that the Court found that defendants failed to provide adequate notice only in advance of the designation, while

finding that adequate notice was provided in advance of the redesignation.  In fact, the Court concluded that AHIF was deprived of notice in advance of *both* its initial designation and its subsequent redesignation, and that the first time AHIF learned of the factual and legal bases of OFAC's actions was February 2008, *after* it had been redesignated.  *AHIF,* 585 F. Supp. 2d at 1256.  Notice provided after the redesignation decision was made could not possibly cure the constitutional violation, because at that time the administrative record was closed and AHIF had no opportunity to respond.

   **A.  The Failure to Provide Notice of the Legal and Factual Bases for Designation and Redesignation in Time for AHIF to Respond Is a Structural Defect Defying Harmless Error Analysis.**

   As explained in plaintiffs' supplemental memorandum, Pl. Supp. Mem. at 3-6, some constitutional errors are not subject to harmless error analysis at all.  "Structural errors" infect the entire proceeding, and therefore defy the kind of inquiry necessary to establish that an error was "harmless beyond a reasonable doubt."  The error in this case – failing to inform AHIF of the factual and legal bases of OFAC's potential designation and redesignation – is just such a structural error, and therefore cannot be deemed harmless.  One cannot reconstruct what a legal proceeding might have looked like had one party known what was at stake, and therefore courts have held that failure to provide such notice is a structural error.  *See* Pl. Supp. Mem. at 4 (citing cases).

   Defendants respond that the due process violation it committed here is not "structural" because that category is ostensibly limited to "only the most serious constitutional violations," and the failure to provide notice is not as "serious" as the introduction of a coerced confession.  Def. Supp. Mem. at 4-5.  But this misunderstands the rationale behind the structural error principle.  It is not based on an inherently subjective assessment of whether one constitutional

error is more "serious" than another.  The Constitution does not rank rights in order of importance, and no court has suggested that there is some threshold of "seriousness" that must be attained before a constitutional violation can be "serious" enough to be "structural."

Rather, the "structural error" doctrine identifies those errors that are not susceptible to harmless error analysis.  The improper introduction of illegally obtained evidence is not a "structural error," as such errors can generally be assessed retrospectively to determine whether they were harmless.  If the properly admitted evidence overwhelmingly supports guilt beyond a reasonable doubt, and the offending evidence was cumulative or not critical to the result, its wrongful admission can be deemed "harmless."   But where a party is not told what is at issue in the proceeding, as when a criminal defendant is tried for something for which he was not indicted, there is literally no way to assess how the proceeding might have been different had he known.  The same is true here, where AHIF was assessed on the basis of factual and legal charges that were never disclosed to it until the proceeding was over, and was actually affirmatively misled as to what would be at issue.  Accordingly, OFAC's failure to inform AHIF of the factual or legal basis of the charges against it until after the proceeding was concluded permeated the entire proceeding, and was therefore a structural error that requires the Court to lift the designation.

## B. Defendants Have Not Established That the Failure to Provide Notice was Harmless Beyond a Reasonable Doubt.

Even if the Court concludes that harmless error analysis is appropriate, defendants have nonetheless failed to establish that their failure to provide AHIF with notice was harmless beyond a reasonable doubt.  Defendants argue that the error was harmless because it was limited to their initial designation of AHIF, and was cured by the notice provided in connection with the subsequent redesignation.  Indeed, defendants go so far as to claim that this Court found that they

had provided constitutionally adequate notice in connection with the redesignation process. Def. Supp. Mem. at 5-6. This misrepresents both this Court's decision and the underlying facts.

Defendants argue that this Court found only a violation with respect to the initial designation, but that this violation was "corrected" by defendants' provision of a "lengthy explanation … in support of [defendants'] redesignation decision." Def. Supp. Mem. at 5-6 (quoting *AHIF*, 585 F. Supp. 2d at 1257). The actual sentence quoted from this Court's opinion states, in full, that "The government provides no explanation for its inability to provide earlier the kind of lengthy explanation it issued in support of its redesignation decision." 585 F. Supp. 2d at 1257. That "lengthy explanation" refers not to any advance notice provided before redesignation, but to the statement provided in February 2008, at the *conclusion* of the redesignation process, in the decision announcing that OFAC had indeed redesignated AHIF. By that time, the administrative record was closed, and AHIF had no opportunity to respond by submitting evidence. It is akin to entering a tort judgment against a physician for malpractice and telling him only when the decision is rendered what he was being sued for.

The Court's decision makes clear that it found that OFAC violated due process rights in connection with *both* the designation and redesignation decisions. The heading for the section discussing the due process claim is titled "Notice of the Reasons for the Designation and Redesignation." *AHIF,* 585 F. Supp. 2d at 1254. The Court explains that OFAC first failed to give notice of the charges in connection with the initial designation. *Id.* at 1255-56. It then goes on to state that "Similarly, OFAC gave no information accompanying its notification to AHIF-Oregon that it was evaluating whether to redesignate the organization." *Id.* at 1256. The Court acknowledged that when facing redesignation, AHIF "had the benefit of the press release announcing its designation," but found that "the press release did not specify SDGT ownership

or control of AHIF-Oregon as a reason for the designation" and misleadingly included charges "that it did not mention in its redesignation decision." *Id.* at 1257. In fact, the Court found that the *first time* OFAC actually told AHIF the factual and legal bases for either the designation or redesignation was February 2008, when both processes were complete and there was no longer any opportunity for AHIF to submit a response. *Id.* at 1256.

In short, the "lengthy explanation" defendants repeatedly cite as somehow "correcting" their failure to provide notice came only at the end of the redesignation process, when AHIF no longer had an opportunity to respond.

### C. The Information That OFAC Disclosed Did Not Provide AHIF Adequate Notice of the Factual and Legal Bases for Its Designation and Redesignation.

Defendants also argue that their due process violation was harmless because even though they never told AHIF the bases for OFAC's actions, AHIF should have guessed what was at issue from some of the hundreds of pages of documents that OFAC disclosed, and that AHIF's submitted response shows that it did understand what was at issue. Def. Supp. Mem. 7-11.

This Court has already found to the contrary. Thus, it noted that the documents AHIF received "contained many documents seemingly unrelated to AHIF-Oregon, and contained no documents that could be considered the 'smoking gun.'" *AHIF*, 585 F. Supp 2d at 1257. Indeed, the Court found that AHIF was misled into responding to concerns that ultimately were not at issue, and never had a chance to respond to the concerns that ultimately proved dispositive. *Id.* Thus, the Court concluded, notice of the potential charges against AHIF "would have saved AHIF-Oregon the effort of responding to imagined concerns and may have increased its likelihood of success." *Id.* This finding precludes any conclusion that OFAC's violation was harmless beyond a reasonable doubt because AHIF actually knew what was at issue.

Defendants argue that AHIF should have intuited the bases for its redesignation from a

press release issued when it was initially designated.  Def. Supp. Mem. 7, 10.  Here, too, the

Court's prior findings preclude any conclusion that the press release rendered defendants'

violation harmless beyond a reasonable doubt.  "The press release did not specify SDGT

ownership or control of AHIF-Oregon as a reason for the designation," and the release instead

included the misleading – and unsubstantiated – charge "that AHIF-Oregon had 'direct links' to

'Usama bin Laden.'"  *AHIF*, 585 F. Supp. 2d at 1257.

In fact, the press release fails to mention *any* of the grounds on which OFAC ultimately

relied in its redesignation.  It does not assert that AHIF-Oregon was "owned or controlled" by

Al-Aqil or Al-Buthe.  And it does not assert that AHIF-Oregon supported SDGTs simply by

being a branch of AHIF-SA.   Instead, it makes only three accusations:

(1)      It accuses AHIF-Oregon of direct links to Osama bin Laden.  This Court has

found that accusation entirely unsubstantiated, *AHIF*, 585 F. Supp. 2d at 1257, and

OFAC did not assert it as a ground for redesignating AHIF-Oregon.

(2)      It accuses AHIF-Oregon of violating tax and money laundering laws.  Those

charges have since been dropped, but in any event, tax and money laundering violations

are not a basis for designation, and OFAC did not rely upon them for redesignation.

(3)      It states that funds donated to AHIF-SA "with the intention of supporting

Chechen refugees were diverted to support mujahideen, as well as Chechen leaders

affiliated with the al-Qaeda network."  This allegation appears to concede that the funds

were donated with a legitimate intention, and does not even identify who is alleged to

have "diverted" the funds.  Thus, it is not even clear that it implicates AHIF-Oregon in

any wrongdoing.  More to the point, however, OFAC did not rely on a conclusion that

AHIF-Oregon funded mujahideen or persons affiliated with al Qaeda for its

redesignation.

Thus, as this Court has already found, the press release announcing the initial designation

did not inform AHIF-Oregon of the bases for the redesignation, and if anything, misled it to

respond to issues that were not material.

Only *after* AHIF-Oregon was redesignated did it learn that OFAC had designated it for

being owned or controlled by Messrs. Al Aqil and al-Buthe, and for indirectly supporting

terrorist organizations by being a "branch" of AHIF-SA, which in turn allegedly supported

designated entities.  Had it known that these were the potential bases for its redesignation, AHIF-

Oregon would have responded very differently.

First, AHIF-Oregon has shown that if it had known Mr. Al-Buthe's ownership or control

were an issue, he would have resigned.  *See* Al-Buthe Declaration (Feb. 15, 2009); Nelson

Declaration (Feb. 13, 2009) (attached as Exhibits 1-2 to Pls. Supp. Mem.).  Defendants argue

that Mr. Al-Buthe's failure to resign thus far undermines plaintiff's claim, Def. Supp. Mem. 9,

but that does not follow.  Since both Mr. Al-Buthe and AHIF are designated and are challenging

their designations, and since the case is now before this Court on the legality of the existing

redesignation, it would be premature for him to resign at this point.  But defendants offer no

evidence to refute Mr. Al-Buthe's claim that as soon as it might make a difference, he would

resign.  And Mr. Al-Aqil's resignation shows that AHIF is willing to disassociate itself from

designated persons.  In short, defendants have not met their burden of establishing beyond a

reasonable doubt that Mr. Al-Buthe would not have resigned, or that his resignation could not

have affected AHIF's status.[2]

Second, had AHIF known that its relationship to AHIF-SA was the issue, rather than the specifics of the Chechen donation, it would have shown that none of its activity in connection with AHIF-SA supported any designated terrorists, that it played no role in much of AHIF-SA's conduct, and that it reasonably relied on OFAC's own conduct in *not* designating AHIF-SA, until nearly four years later, leaving AHIF-Oregon to assume that dealings with AHIF-SA were not prohibited.[3]

Defendants also argue that press releases reporting designations of *other* AHIF-SA branches should have put AHIF-Oregon on notice that it might be designated on the basis of its connection to AHIF-SA. Def. Supp. Mem. 7. But those releases actually tell a very different story. They show that OFAC treated each branch of AHIF-SA as independent, designating only a select minority of the branches, and leaving AHIF-SA itself and the vast majority of its branches undesignated, and therefore legitimate to deal with. In March 2002, OFAC for the first time designated two of AHIF-SA's several dozen branches and affiliates, leaving AHIF-SA itself and all its other branches and affiliates undesignated. AR 103. In December 2003, it designated Vazir, which it claimed was acting as an a/k/a for one of the two previously designated AHIF-SA branches – but left AHIF-SA and all other branches undesignated. AR 235. In January 2004, it designated four more branches, AR 237, and in June 2004 it designated five additional branches, AR 344 – but still left AHIF-SA and the majority of its branches undesignated. It was not until

---

[2] Defendants argue that AHIF-Oregon should have known Al-Buthe's ownership or control was at issue because he was designated at the same time that AHIF-Oregon was. But, as this Court found, the press release announcing that designation never mentions "ownership or control" as a potential issue. *AHIF*, 585 F. Supp. 2d at 1257. Moreover, both Al-Buthe and AHIF-Oregon are challenging their designations, and for all AHIF-Oregon knew, the designation of Al-Buthe may be have been predicated on the same erroneous (and ultimately abandoned) grounds that OFAC asserted in its initial designation press release as to AHIF-SA.

[3] Defendants object that AHIF-Oregon has not submitted any new evidence since learning of the bases for its redesignation. Def. Supp. Mem. 10, 12-13. But the administrative record was closed by the time AHIF-Oregon first learned, in February 2008, that this was even an issue.

*after* OFAC redesignated AHIF-Oregon in response to this lawsuit that it actually designated AHIF-SA itself (shortly before oral argument in this Court, without ever providing any notice or opportunity to respond to AHIF-SA or AHIF-Oregon).

Defendants argue that because AHIF-Oregon's counsel submitted evidence regarding a $150,000 donation for humanitarian relief to Chechnya that went through AHIF-SA, AHIF-Oregon must have known that its relationship to AHIF-SA was at issue. Def. Supp. Mem. at 8-9. But AHIF-Oregon's submission regarding the Chechen donation was based on OFAC's assertion that the funds had been diverted to support mujahideen or leaders affiliated with al Qaeda. AR 1872. Accordingly, AHIF-Oregon submitted voluminous evidence, unrefuted by OFAC, that the money was donated as part of an official humanitarian relief program jointly approved by both the Saudi and Russian governments, and was fully accounted for. *See* AR 0361-0396 (May 14, 2004); AR 0397-0410 (May 27, 2004); AR 424-592 (Aug. 4, 2004); AR 0795-0999 (Aug. 31, 2004, Sept. 7, 2004 & Feb. 14, 2005); AR 1074-1076 & 2052-2169 (Sept. 21, 2005). OFAC did not ultimately find that AHIF-Oregon's Chechen donation violated E.O. 13224 because it was diverted to mujahedin or anyone affiliated with al Qaeda.[4]

Accordingly, by failing to tell AHIF-Oregon *any* of the bases for its potential redesignation, and then *not* relying in its redesignation decision on *any* of the charges leveled in its initial designation press release, OFAC not only failed to provide AHIF with accurate notice, but affirmatively misled it by articulating concerns that ultimately played no part of its redesignation decision. In short, OFAC shifted the entire theory of its case from the designation

---

[4] Defendants claim that AHIF-Oregon's ability to provide documentation previously regarding the Chechen donation belies its argument that OFAC's failure to provide notice has irreparably harmed it because it cannot obtain documents from AHIF-SA now that the latter entity is closed. Def. Supp. Mem. 9 n.4. This is a non sequitur. That AHIF-Oregon could obtain evidence when AHIF-SA was a going concern does not in any way refute plaintiffs' showing that such evidence can not be obtained now that AHIF-SA has been shut down and its records are inaccessible.

to the redesignation, without ever seeking to correct the misinformation it provided AHIF-Oregon in connection with the initial designation.

Finally, defendants argue that if the Court finds that the due process violation was not harmless beyond a reasonable doubt, it should remand the matter to OFAC, rather than lift the designation. Def. Supp. Mem. 11-12. But if the designation and redesignation were both unconstitutional for failure to provide notice and a meaningful opportunity to respond, there is no legal basis for leaving them in place. To lift the designation, moreover, does not jeopardize any legitimate government interests or leave OFAC without recourse. AHIF-Oregon would be bound by existing law to avoid funding any terrorist activity or designated entity or person. The only entity it is charged with funding, AHIF-SA, is now defunct. And if the government appealed, AHIF-Oregon would be willing during the pendency of the appeal to inform OFAC of its funding actions. As long as AHIF-Oregon is not funding terrorist activities or organizations, OFAC has no legitimate interest in freezing its assets, particularly where it has never established in a fair process that it has engaged in activity warranting designation. And if the government were to adopt a legal framework for a proceeding that satisfied constitutional scrutiny (under both the Fourth and the Fifth Amendments), it could proceed against AHIF-Oregon again. In the meantime, the Court should restore the status quo prior to the constitutional violations by lifting the designation.

Plaintiffs also respectfully request that the Court should also vacate as premature that part of its prior decision upholding AHIF's designation on the merits. Because AHIF was never informed as to the basis of the proceeding, it never had an opportunity to present its side of the story, and the administrative record was therefore fatally incomplete. Neither OFAC nor this Court should rule on whether AHIF is properly subject to designation until AHIF has been

afforded a meaningful opportunity to respond to the allegations against it.  To rule before AHIF

has had a meaningful opportunity to respond would be akin to a court ruling for a plaintiff in a

civil suit at the close of the plaintiff's case, without even hearing from the defendants.  This

Court's prior decision established that AHIF never had a meaningful opportunity to respond

because it was not told what was at issue.  Until AHIF is afforded that opportunity, it is

premature to rule on whether the evidence supported its designation.

> **II.    DEFENDANTS' FREEZE OF AHIF-OREGON'S ASSETS FOR MORE
> THAN FIVE YEARS WITHOUT PROBABLE CAUSE OR A WARRANT
> IS AN UNREASONABLE SEIZURE IN VIOLATION OF THE FOURTH
> AMENDMENT.**

In its November decision, this Court ruled that OFAC's freeze of the entirety of AHIF-

Oregon's assets, which has now lasted more than five years, was a "seizure" under the Fourth

Amendment, but requested further briefing on whether it was an unreasonable seizure.  *AHIF*,

585 F. Supp. 2d at 1262-64.  Plaintiffs maintain that unless the seizure meets the requirements of

a recognized exception, the general rule under the Fourth Amendment is that a seizure requires

probable cause and a warrant.  *United States v. Delgado*, 545 F.3d 1195, 1201 (9th Cir. 2008),

*cert. denied*, 129 S. Ct. 1383 (2009).  The interposition of an independent judicial assessment

between the government and the citizen is a critical element of Fourth Amendment protections,

and there is no reason why such a process could not be followed with respect to seizures under

E.O. 13224.  Moreover, the Supreme Court has held that even the temporary seizure of a piece of

luggage for 90 minutes requires probable cause, *United States v. Place*, 462 U.S. 696 (1983), so

that the five year seizure of all of AHIF's assets requires no less.  The proper remedy for this

Fourth Amendment violation is the same as for the Fifth Amendment violation – an order that

the unconstitutional designation and freeze be lifted, in order to restore the status quo.

Defendants make four arguments in their supplemental brief.  First, rearguing the point

this Court has already decided, they contend that the freeze is not a Fourth Amendment seizure

because the government has long enforced economic sanctions laws without adhering to the

Fourth Amendment.   Def. Supp. Mem. 13-18.  Second, they maintain that if a freeze is a seizure,

all freezes under E.O. 13224 – regardless of their justification – are "*per se* reasonable."  *Id.* at

18-21.  Third, they contend that seizing assets for more than five years without a warrant and

probable cause is reasonable because the government is seeking to further national security and a

warrant requirement would be impracticable.  *Id.* at 22-26.  Finally, they maintain that this

Court's holding that AHIF-Oregon's redesignation was not arbitrary and capricious under the

Administrative Procedures Act "resolves any potential Fourth Amendment issue."  *Id.* at 26.

Plaintiffs will respond to these points in turn.

### A.  The Freeze is a Seizure, and Defendants Cite No Historical Evidence to the Contrary.

Defendants first contend that their freezing of AHIF-Oregon's assets for more than five

years should not be treated as a "seizure" triggering Fourth Amendment scrutiny at all, because

the Supreme Court and other courts have previously addressed blocking orders and related

sanctions without "any hint that these actions raise Fourth Amendment concerns."  Def. Supp.

Mem. 14.  But, as this Court stated in rejecting the same argument the first time around:  "the

government's assertion that the Supreme Court has never considered a blocking order to be a

Fourth Amendment violation is unpersuasive; I note that no litigant asked it to do so."  *AHIF*,

585 F. Supp. 2d at 1262.[5]

Defendants cite only two district court decisions that have addressed and rejected a

Fourth Amendment challenge to a freeze; this Court has already addressed those decisions and

found them unpersuasive because they confused the standard for a Fifth Amendment taking of

---

[5] The same is true of the lower court decisions upholding various economic sanctions that defendants cite.  Def. Supp. Mem. 17.  None of them addressed a Fourth Amendment challenge.

property with the much lower standard for a seizure.  *Id.* (declining to follow *Islamic American*

*Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 48 (D.D.C. 2005), and *Holy Land*

*Found. v. O'Neill*, 219 F. Supp. 2d 57 (D.D.C. 2002)).

       Moving beyond mere repetition of arguments already rejected, defendants contend that

the fact that Congress has authorized the President to freeze assets should somehow insulate

OFAC's actions from Fourth Amendment review.   Def. Supp. Mem. 14-15 (citing Justice

Jackson's concurrence in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635-36

(1952).   But defendants have conflated two very different issues – Justice Jackson in

*Youngstown* was addressing a separation of powers challenge, not a Fourth Amendment dispute.

Legislative authorization of executive action is highly relevant to a separation-of-powers inquiry.

But a statute cannot override the government's obligation to conform to the constitutional

dictates of the Fourth Amendment.  The fact that Congress has authorized the FBI to conduct

wiretaps, for example, does not immunize wiretaps from Fourth Amendment scrutiny, even

where they are conducted for foreign intelligence and national security purposes.  *See, e.g.,*

*United States v. Carneiro*, 861 F.2d 1171 (9th Cir. 1988) (applying Fourth Amendment scrutiny

to electronic surveillance authorized by Title III); *In re Sealed Case No. 02-001,* 310 F.3d 717

(U.S. Foreign Intell. Surveil. Ct. Rev. 2002) (applying Fourth Amendment scrutiny to Foreign

Intelligence Surveillance Act authorization of electronic surveillance conducted for foreign

intelligence).

       Defendants argue that forfeiture law is not an apposite analogy because in the forfeiture

setting, the government seeks to take title permanently.  Def. Supp. Mem. 17.  But, as this Court

has already recognized, while that distinction is relevant to Fifth Amendment takings law, it

makes no difference when it comes to Fourth Amendment seizures.  As *United States v. Place*

illustrates, seizures routinely occur without a vesting of title, yet nonetheless must be supported by probable cause.  *Place*, 462 U.S. 696 (treating temporary 90-minute detention of luggage as a seizure requiring probable cause).

**B.  Blocking Actions are Not *Per Se* Reasonable.**

Defendants next argue that even if the Court does not revisit and reverse its prior determination that a freeze is a seizure, it should hold that freezes are *per se* reasonable under the Fourth Amendment.  Analogizing to border searches, they argue that the Court should simply announce that the freezing of property under E.O. 13224 is *per se* reasonable, regardless of whether the government has any level of suspicion, and regardless of whether there are any effective checks on discretion in place.

This argument fundamentally misunderstands the border search doctrine.  That doctrine recognizes a categorical exception to the presumptive Fourth Amendment requirement that searches must be based on a warrant and probable cause.  The exception is based on the pre-Constitution common law doctrine that searches are reasonable at the border, and on the Supreme Court's determination that the Framers of the Fourth Amendment did not intend to alter this common law tradition, which in turn was predicated on the necessity to be able to stop and search persons in order to protect the sovereign's right to control over its own borders.  *United States v. Ramsey,* 431 U.S. 606, 616-17 (1977).

There is no similar common law or Framers' era predicate for creating an exception for blocking orders generally.  Defendants cite no evidence that the Framers recognized a long-established presumption that the President could block property of persons who he claimed associated with terrorists, because there is none.

Moreover, a categorical exception makes no sense here, because the "category" is not

clearly defined.  A border search is a definable category – a routine search at the border for

customs purposes.  *See United States v. Montoya De Hernandez,* 473 U.S. 531, 537 (1985).  It is

limited to a specific type of enforcement at a specific place.  Blocking of property, by contrast,

knows no such limits.  If the Court were to rule that all blocking orders are *per se* unreasonable,

then it would necessarily rule that the Fourth Amendment permits the executive branch to freeze

anyone's assets anywhere, without regard to any suspicion of wrongdoing and without any

judicial safeguards.  Among other things, the government could simply abandon statutory

forfeiture actions, with all their constitutionally required safeguards, because the President could

simply freeze property instead of forfeiting it.

Defendants' suggestion of a categorical exception with respect to E.O. 13224 (and

presumably not any other executive order authorizing blocking) makes even less sense.   Fourth

Amendment doctrine is constructed as a form of general rules and exceptions; never before has a

court found a categorical exception to the Fourth Amendment predicated on a specific regulation,

executive order, or statute. Accordingly, the Court should reject defendants' suggestion of a

wholly untethered concept of *per se* reasonableness as applied to blocking orders generally, or

blocking orders under E.O. 13224.

### C.  The Freeze of AHIF-Oregon's Assets Is Not Reasonable Under Special Needs or Any Other Fourth Amendment Doctrine.

For the freeze to be deemed constitutional, it must fall within one of the recognized

exceptions to the presumptive Fourth Amendment requirement of probable cause and a warrant.

Defendants concede that neither IEEPA nor E.O. 13224 require a warrant or probable cause of

wrongdoing, but merely an executive determination of "a reasonable basis to believe" that one of

the criteria in E.O. 13224 has been met.  Def. Supp. Mem. 17.

Courts have sometimes upheld searches without probable cause or a warrant, where the

government can point to special needs above and beyond ordinary law enforcement that "make the warrant and probable cause requirement impracticable." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). In such situations, however, the government must further establish that its "special need" interests are sufficiently important, that the intrusion on privacy or property interests is minimal, and that there are adequate substitute checks on discretion in lieu of the ordinary warrant and probable cause requirements. *See* Pl. Supp. Mem. 15-24. "[T]he burden is on those seeking the exemption to show the need for it." *United States v. Jeffers*, 342 U.S. 48, 51 (1951). Defendants cannot make that showing here.

### 1.   Neither a Warrant Nor Probable Cause is Impracticable.

While plaintiff does not dispute that cutting off funding for terrorist activity is an important interest, the government has failed to show why it could not pursue those goals subject to probable cause and warrant requirements. Defendants claim that because they do not always know where an entity's assets are located, they would not know which court to seek a warrant from, and the warrant might not satisfy the particularity requirements. Def. Supp. Mem. 23-24. But there is no reason why Congress could not proceed here as it did under the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801, et seq., empowering one court to act as the issuer of warrants nationwide. The particularity requirement, moreover, could be met by identifying the designated entity with particularity. The critical purpose of the warrant requirement is to "insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen and the [executive officer], to assess the weight and credibility of the information which the complaining officer adduces as probable cause." *Wong Sun v. United States*, 371 U.S. 471, 481-82 (1963). "To hold that an officer may act in his own . . . would subvert this fundamental policy." *Id.* Defendants offer no reason why this crucial function could

not be carried out by a court similar to the Foreign Intelligence Surveillance Court.

Warrant applications are typically conducted *ex parte*, and as a result there is no legitimate concern that seeking a warrant might tip off a potential designee.  And under the established "exigent circumstances" exception, if a particular case required action before seeking a warrant, the Fourth Amendment permits that on a case-by-case basis. There is no showing that any such exigency existed here, much less that such exigencies exist with respect to blocking orders generally.  *See Richards v. Wisconsin,* 520 U.S. 385 (1997) (rejecting an across-the-board exception to the Fourth Amendment knock and announce requirements for drug searches, because case-by-case application of the exigent circumstances exception fully meets the government's legitimate needs)*; see also United States v. Black*, 466 F.3d 1143, 1145-46 (9th Cir. 2006), *amended by* 482 F.3d 1035 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 612 (2007) (declining to find that domestic abuse cases create a *per se* exigent need for warrantless entry, and affirming the need to "evaluate, on a case-by-case basis" whether exigent circumstances exist.)

Defendants do not even try to offer an argument as to why the probable cause requirement would be impracticable for designations.  The Executive Order specifies certain conduct and relationships that give rise to a designation, and given the severity of the effect of designation, there is no reason why a designation ought not at a minimum require probable cause that the criteria have been met.   Defendants simply assert, without explanation or argument, that the standard for designations is less than probable cause.  Def. Supp. Mem. 17.  That bald assertion does not in any way satisfy their burden of showing that probable cause would be impracticable.

The only standard for suspicion less than probable cause recognized by Fourth

Amendment jurisprudence is "reasonable suspicion."  But the Court has reserved that lower

threshold for very brief seizures of persons and property; any seizure of property for over 90

minutes, for example, requires probable cause, not reasonable suspicion.  *United States v. Place*,

462 U.S. 696 (1983).  If holding a single piece of a traveler's luggage for 90 minutes requires

probable cause, *id.* at 710, then surely freezing the entirety of a charity's assets for five years

requires no less.

### 2.    The Intrusion on Property Effectuated Here Is in No Sense Minimal.

Identifying a special need that makes the warrant and probable cause requirements

impracticable is only the first step toward validating a search or seizure under the special needs

exception.   The Court must then balance the intrusion on privacy or property against the

government's legitimate interests.   *United States v. Scott*, 450 F.3d 863, 869-72 (9th Cir. 2006);

*Henderson v. City of Simi Valley*, 305 F.3d 1052, 1059 (9th Cir. 2002) (same).  Generally, courts

will find special needs searches and seizures reasonable where they are minimally intrusive and

where the legal scheme provides adequate substitute safeguards on executive discretion.

Defendants argue that the freeze here was reasonable, but fail to confront the fact that the seizure

is anything but minimal, or that there are few if any alternative checks on executive discretion.

In this case, AHIF-Oregon has had the entirety of its assets frozen for more than five

years.  The effect of the freeze was to put AHIF-Oregon out of business entirely.  And there is no

end in sight.  Despite being tasked with the burden of establishing that an exemption to the

probable cause and reasonableness requirements is justified, defendants have cited no case

countenancing such an extreme intrusion on privacy or property interests under the special needs

or any other exemption.

On the contrary, virtually every case defendants cite where a court has upheld a search or

seizure on less than probable cause and a warrant involved either a minimal intrusion or

diminished privacy or property interests.  Thus, the Supreme Court has upheld the right of school

authorities to search students in schools on the ground that students have a reduced expectation

of privacy.  *New Jersey v. T.L.O.*, 460 U.S. 325 (1985).  Similarly, in *United States v. Knights*,

534 U.S. 112, 119-20 (2001), the Court upheld as reasonable a search of a probationer's home

where the authority to search was imposed as a condition of post-conviction punishment, and

consented to by the probationer.  The Court found that because of the conviction and consent, the

defendant had a reduced expectation of privacy, and was still subject to the authority of the state.

*Id.*

By contrast, the Ninth Circuit invalidated suspicionless drug testing of a defendant

released pending trial, finding that the doctrine governing searches of probationers was

predicated on their reduced expectation of privacy as a result of their conviction and punishment.

As the court explained in *United States v. Scott*, the probationer's exception "is properly read as

limited by the fact that probationers have a lesser expectation of privacy than the public at large."

*Scott*, 450 F.3d at 872 (internal citations omitted). "People released pending trial, by contrast,

have suffered no judicial abridgment of their constitutional rights." *Id.*

Defendants argue that AHIF-Oregon has a diminished property interest because of its

"link to international terrorist organizations," Def. Supp. Mem. 19, but that puts the cart before

the horse.  The Fourth Amendment is designed to establish the degree of suspicion and the

procedural safeguards that the government must meet *before* it takes action against alleged

wrongdoers.  *See Henry v. United States*, 361 U.S. 98, 102-03 (1959). It cannot argue, for

example, that because a defendant was charged with murder or involvement in organized crime,

his privacy interests were reduced and a search could be conducted without satisfying probable

cause.  Nor could the government argue in a seizure case that the gravity of the crime suspected

affects the privacy interests of the person whose property is to be seized.  The same Fourth

Amendment standards apply to investigations of drunk driving, tax fraud, murder, and terrorism.

Finally, courts assessing whether a search or seizure scheme is reasonable in the absence

of a warrant or probable cause ask whether the scheme in place "provides a 'constitutionally

adequate substitute for a warrant.'"  *New York v. Burger*, 482 U.S. 691, 703 (1987) (quoting

*Donovan v. Dewey*, 452 U.S. 594, 602 (1981)).  Where an administrative search scheme is

closely regulated and standardized, for example, so that executive discretion is limited, it is more

likely to be upheld.  *Burger*, 482 U.S. at 703.

Defendants argue that the combination of pre-freeze internal consultation within the

executive branch, and the possibility of judicial review after the fact under the APA, provides

sufficient checks on executive discretion to substitute for a warrant.  But defendants cite no court

holding that inter-agency consultation is an effective safeguard on executive discretion.  And the

availability of after-the-fact judicial review is immaterial; victims of Fourth Amendment

violations can seek judicial review, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388

(1971), but that fact does not justify eliminating the probable cause and warrant requirements

generally.  Moreover, given the deferential standard that defendants claim applies to APA

review, *see* Def. Supp. Mem. 17, 25, the possibility of judicial review after the fact is hardly a

sufficient check on executive discretion.  Further, as this case illustrates, OFAC is free to insulate

its actions from judicial review even after it is sued by simply redesignating, changing entirely

the bases for its actions, and then arguing that the initial designation is moot and cannot be

reviewed.

Finally, defendants argue that even if they violated AHIF-Oregon's Fourth Amendment

rights, it does not matter, because the Court upheld the redesignation under APA review.  Def. Supp. Mem. 26.  But, as noted above, that determination was premature.  In any event, just as the question of a defendant's guilt is a separate question from whether a search was constitutional, so, too, whether the designation survives deferential APA review does not resolve whether a five-year seizure, without probable cause, a warrant, or an adequate substitute to check executive discretion, is constitutional.  If the Court concludes that AHIF-Oregon's assets have been seized unconstitutionally, it should lift the designation and vacate the freeze.

As noted above, such an order would not jeopardize any legitimate government interests. AHIF-Oregon would remain subject to the laws prohibiting material support to designated terrorist organizations.  The only organization it is alleged to have improperly supported is defunct.  And were the government to appeal, AHIF-Oregon would be willing during the pendency of an appeal to inform OFAC of all of its distributions of assets, thus ensuring that none of its funds will further any terrorist activity.  Finally, if the government put in place a scheme that satisfied Fourth and Fifth Amendment requirements, as it has under the forfeiture statute, it could once again pursue AHIF-Oregon under that constitutionally valid scheme.  Thus, OFAC has identified no interest that would be jeopardized by a ruling that would remedy the constitutional violation by restoring the status quo.

### III.    THE COURT SHOULD ORDER OFAC TO AUTHORIZE AHIF TO PAY ALL ATTORNEY FEES REASONABLY INCURRED IN CHALLENGING ITS DESIGNATION AND REDESIGNATION.

In its November 2008 decision, this Court found that defendants' application of its attorneys' fees policy to AHIF was arbitrary and capricious, and ordered further briefing on the appropriate remedy.  Defendants' supplemental brief is largely unresponsive to that order.  They attempt to reargue what the Court has already decided, despite the fact that they have not filed a

motion for reconsideration, and invoke an entirely inapposite statute, the Equal Access to Justice Act. Since defendants have offered no reasonable alternative to plaintiffs' proposal, the Court should adopt plaintiffs' proposal and order defendants to permit AHIF to withdraw sufficient funds from its blocked accounts to pay its attorneys the $28,000 OFAC has generally imposed as a cap, plus 80% of the remaining uncompensated legal expenses that are owed.[6]

Defendants principally argue that the Court should have rejected plaintiffs' claim for relief under the APA, and instead ordered them to file a request for attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Def. Supp. Mem. 27. This is a red herring. The EAJA addresses an entirely different – and premature – issue. It requires the government to pay attorneys' fees to a prevailing party where the government's position in the litigation was not substantially justified. But the issue here is not whether *the government* should be required to compensate AHIF's attorneys – but whether AHIF should be able to *use its own money* to compensate its own attorneys. These are entirely different questions.

It is possible that when this litigation is concluded, plaintiffs will be entitled to an award of attorneys' fees from the government. But that question is premature at this stage, as the litigation is not finally resolved. Moreover, the threshold for when the federal government must pay an opposing party's attorneys' fees is understandably high; Congress has provided that the federal government should pay a private party's attorneys' fees only when the private party has prevailed in the litigation, and the government's actions were unreasonable -- and even then, only fees in connection with litigation, not administrative proceedings, are recoverable. But private parties may generally use their own resources to pay their own attorneys whether they win or lose, regardless of the reasonableness of the government's position, and in administrative

---

[6] Because plaintiffs' prior submission only included their attorneys' time through January 2009, plaintiffs will soon submit a supplemental declaration setting forth the additional fees owed through April 2009.

as well as judicial proceedings.

In this case, the Court ruled that the government's refusal to allow AHIF to use its own money to pay for a legal challenge to its designation was arbitrary and capricious in violation of the Administrative Procedures Act. It found that the caps ($14,000 for administrative proceedings and $14,000 for judicial proceedings) were unrealistically low in light of the extra work OFAC caused plaintiffs' counsel to have to undertake. Because OFAC designated AHIF without providing it with notice of the charges against it, redesignated it after this lawsuit was filed, apparently under an entirely different theory, and again without providing notice of the charges against it, and only informed AHIF of the basis for its actions *after* designation and redesignation had been completed and the administrative record had been closed, it forced AHIF to expend unnecessary resources responding to irrelevant issues, and to litigate against a moving target. (Indeed, OFAC even changed its attorneys' fees policy after AHIF filed the suit; before it changed it in response to the filing of this lawsuit, OFAC barred AHIF from using *any* of its own resources to pay for attorneys' fees and costs).

The Court also found OFAC's policy arbitrary because it denied AHIF *any* fees on the ground that it had been able to obtain at least $28,000 from fresh funds overseas to pay its attorneys, in effect penalizing it for its ability to raise some funds overseas. *AHIF*, 585 F. Supp. 2d at 1272. OFAC argues that this was erroneous, because OFAC offsets allowable fees out of a designated entity's frozen accounts whether that entity raises those funds before or after the entity spends its own frozen resources. Def. Supp. Mem. at 29-30. But whether the offset is done before or after, this policy arbitrarily penalizes those entities that can raise any money from fresh funds by counting that against the amount they are allowed to spend of their own funds.

Contrary to defendants' recharacterization, the Court did not assess a "penalty" against

OFAC.  Def. Supp. Mem. at 28.  Rather, it concluded that OFAC's application of its policy to AHIF was arbitrary.  Plaintiffs have proposed that the appropriate remedy, in light of the Court's findings, is to order OFAC to permit AHIF access to $28,000 from its frozen funds, reflecting the cap OFAC has generally set; and to permit it access to an amount equivalent to 80 percent of the uncompensated fees and expenses above that figure, reflecting the extra work OFAC's misleading and redundant conduct necessitated.  Pl. Supp. Mem. at 25-28.

AHIF will soon update its initial request to include the fees incurred in drafting the supplemental memorandum, reviewing the government's supplemental memorandum and researching and drafting this reply memorandum.  Accordingly, based on AHIF's initial and supplemental fee submissions, the Court should order at this point that AHIF be permitted to access its frozen funds to pay attorneys' fees and costs incurred to date.

OFAC offers no counterproposal in response to plaintiff's proposal.  It does not contend that the attorneys' fees requested by AHIF are unreasonable, nor does it suggest that any portion of those fees and costs ought not to be compensated.  Accordingly, the Court should grant AHIF's request.[7]

## CONCLUSION

For all the above reasons, the Court should rule that defendants' violation of AHIF's due process rights was not harmless, that its freeze of AHIF's assets for more than five years without a warrant or probable cause is unreasonable, and that AHIF is entitled to use its frozen funds to pay reasonable attorneys' fees and costs associated with its challenge to its designation and redesignation.  The Court should vacate its earlier decision that the designation was supported by

---

[7] Defendants ask the Court to stay its order regarding attorneys' fees to permit the Solicitor General time to determine whether to appeal.  Plaintiffs would not object to a 30-day stay of this order for this limited purpose. However, should the Solicitor General seek an appeal, it should then be the government's burden to seek a stay pending appeal and to establish that it has satisfied the standards for such a stay.

the evidence as premature in light of defendants' failure to afford AHIF notice that would afford

it a meaningful opportunity to respond.  And the Court should vacate the existing designation.

Respectfully submitted this <u>30th</u> day of April 2009.

/s/ David Cole

_____

David Cole, DC Bar No. 438355
  (202) 662-9078
Thomas H. Nelson, OSB No. 78315
  (503) 622-3123
J. Ashlee Albies, OSB No. 05184
  (503) 221-1791
Lynne Bernabei, DC Bar No. 938936
Alan R. Kabat, DC Bar No. 464258
  (202) 745-1942
*Attorneys for Plaintiffs*

**<u>Certificate of Service</u>**

Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 100.1(b), 100.2(c), and 100.7(a), I certify that a copy of the foregoing Plaintiffs' Reply Brief in Support of Plaintiffs' Supplemental Memorandum was served on counsel for defendants by this Court's Electronic Case Filing system, this <u>30th</u> day of April 2009.


/s/ Alan R. Kabat
_____
Alan R. Kabat, DC Bar No. 464258
Attorney for Plaintiffs