UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| AL HARAMAIN ISLAMIC FOUNDATION, INC., AND MULTICULTURAL ASSOCIATION OF SOUTHERN OREGON, | Civil Case No. 3:07-CV-01155-KI |
| Plaintiffs, | OPINION AND ORDER |
| vs. | |
| UNITED STATES DEPARTMENT OF THE TREASURY, TIMOTHY GEITHNER, OFFICE OF FOREIGN ASSETS CONTROL, ADAM J. SZUBIN, UNITED STATES DEPARTMENT OF JUSTICE, AND ERIC H. HOLDER, | |
| Defendants. | |

Thomas H. Nelson
P. O. Box 1211, 24525 E. Welches Road
Welches, Oregon 97067

Page 1 - OPINION AND ORDER

J. Ashlee Albies
815 SW Second Avenue, Suite 500
Portland, Oregon  97204
David D. Cole
c/o Georgetown University Law Center
600 New Jersey Avenue, N. W.
Washington, D. C.  20001

Lynne Bernabei
Alan R. Kabat
Bernabei & Wachtel, PLLC
1775 T Street, N. W.
Washington, D. C.  20009-7124

       Attorneys for Plaintiffs

Suart F. Delery
Acting Assistant Attorney General

Sandra M. Schraibman
Assistant Branch Director
Federal Programs Branch

Dianne Kelleher
Stephen Buckingham
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C.  20001

       Attorneys for Defendants

KING, Judge:

Plaintiffs Al Haramain Islamic Foundation, Inc., an Oregon corporation ("AHIF-Oregon"[1]),

and Multicultural Association of Southern Oregon ("MCASO") challenged the decision of the

---

[1] I refer to plaintiff Al Haramain Islamic Foundation, Inc. as AHIF-Oregon throughout this opinion to distinguish it from the world-wide organization of the Al Haramain Islamic Foundation headquartered in Saudi Arabia, which I refer to as AHIF or AHIF-SA.

Page 2 - OPINION AND ORDER

Office of Foreign Assets Control ("OFAC") to designate AHIF-Oregon as a Specially Designated

Global Terrorist ("SDGT").  They also challenged OFAC's blocking order freezing AHIF-

Oregon's assets pending designation, an order which was finalized with the designation.  I upheld

the designation, found a due process violation harmless, and concluded the Fourth Amendment did

not require defendants to obtain a warrant to support a freeze of AHIF-Oregon's assets.  Al

Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury, 585 F. Supp. 2d 1233 (D. Or. 2008)

("AHIF I"); Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury, Civil No. 07-1155-KI,

2009 WL 3756363 (D. Or. Nov. 5, 2009) ("AHIF II").  I also largely dismissed MCASO's[2] First

Amendment challenge.  Id.  AHIF-Oregon and MCASO appealed these rulings.  The Ninth Circuit

Court of Appeals affirmed in part, reversed in part, and remanded.  Al Haramain Islamic Found.,

Inc. v. U.S. Dep't of the Treasury, 686 F.3d 965 (9th Cir. 2012) ("AHIF III").

I have before me memoranda from the parties on the issue remanded by the Ninth Circuit,

as well as plaintiffs' Motion to File a Rule 15(d) Supplemental Complaint.

## BACKGROUND

As set out in more detail in AHIF I, II and III, OFAC concluded, pursuant to the

International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, and its associated

executive order, Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) ("E.O. 13,224"),

that AHIF-Oregon is "owned or controlled" by SDGTs and that it provided financial, material, or

other support to SDGTs as a branch office of the larger AHIF organization headquartered in Saudi

Arabia.  I begin by summarizing the holdings I made in the first two cases, I then summarize the

---

[2]AHIF-Oregon joined in MCASO's First Amendment claim, but for simplicity I refer to it as MCASO's claim.

Ninth Circuit's decision, and I conclude with an update about subsequent interactions between the parties.

I.    AHIF I and AHIF II

OFAC froze AHIF-Oregon's assets and property on February 19, 2004, pending investigation. It was not until February 6, 2008, when OFAC "redesignated" AHIF-Oregon as an SDGT, thereby finalizing the blocking order, that AHIF-Oregon received an explanation for the blocking order. OFAC redesignated AHIF-Oregon because it believed AHIF-Oregon is "owned or controlled" by Soliman H.S. Al-Buthe and Aqeel Al-Aqil, or it acted on behalf of them. In addition, OFAC reported that, "As a branch of the Saudi charity Al-Haramain Islamic Foundation, [AHIF-Oregon] has acted for or on behalf of, or has assisted in, sponsored, or provided financial, material, or technological support for, or financial or other services to or in support of Al Qaida and other SDGTs." AHIF I, 585 F. Supp. 2d at 1246.

As relevant to the issues before me, I came to the following conclusions in the two opinions I issued in this case.

A.    First Amendment Claim

I held MCASO was entitled to judgment as to the vagueness of the term "material support" in the regulatory scheme, but dismissed the remainder of its First Amendment claim.

B.    Fourth Amendment Claim

OFAC's blocking order pending investigation was based on its "reason to believe" that AHIF-Oregon "may be engaged in activities that violate" the IEEPA. Id. at 1255. I found such an order constituted a "'meaningful interference with an individual's possessory interests in that property'" such that it was a "seizure" for purposes of the Fourth Amendment. AHIF I, 585 F.

Supp. 2d at 1262-63 (quoting Soldal v. Cook Cnty., 506 U.S. 56, 61 (1992)).

I then examined the special needs exception to the warrant requirement and determined that the purpose of this seizure transcended normal law enforcement needs, and it would be impractical for OFAC to obtain a warrant. I also found the government's interest in stopping the financing of terrorism outweighed AHIF-Oregon's privacy interests. In sum, I found OFAC's seizure of AHIF-Oregon's assets was reasonable within the meaning of the Fourth Amendment because it was supported by the special needs of the government.

C.    Due Process Claim

After OFAC blocked AHIF-Oregon's assets, it provided documents to AHIF-Oregon in dribs and drabs over the course of approximately seven months. On September 9, 2004, OFAC designated AHIF-Oregon and its director Al-Buthe as SDGTs under the specified criteria of the statute, without giving any further reasoning in the designation letter. It also issued a press release identifying a handful of reasons for the designation, some of which were not consistent with the record or with the regulatory criteria. AHIF-Oregon filed a request that OFAC reconsider its designation on February 14, 2005. In November 2007, approximately three months after plaintiffs commenced this lawsuit, OFAC notified AHIF-Oregon and Al-Buthe that it was considering redesignating them. It provided unclassified documents that it had not provided earlier.

It was not until February 2008 that OFAC finally gave AHIF-Oregon a comprehensive explanation for the designation and blocking order. In examining the reasons OFAC gave for the redesignation, I found OFAC had insufficient evidence showing Al-Aqil retained ownership or control over AHIF-Oregon after he resigned from AHIF-Oregon's Board of Directors in 2003. In contrast, I found substantial evidence of Al-Buthe's ownership or control over AHIF-Oregon at the

time of the designation and redesignation.  Furthermore, I concluded there was sufficient evidence

in the classified and unclassified record demonstrating AHIF-Oregon supported SDGTs as a

branch of AHIF.  Based on my review of the classified and unclassified record, I concluded the

designation and redesignation were supported by substantial evidence.

Although I held AHIF-Oregon was properly redesignated, and that the government's

interest in keeping materials classified took precedence over AHIF-Oregon's due process right to

review the record against it, I nevertheless concluded the government violated AHIF-Oregon's due

process rights in delaying its notice to AHIF-Oregon about the reasons for the designation.

OFAC's September 9, 2004 designation represented the culmination of the investigation of AHIF-

Oregon and finalization of the February 2004 blocking order.  The notice to AHIF-Oregon

contained in the September 2004 letter and press release came too late to constitute notice for

purposes of the Due Process Clause.  At that point, the administrative record had been closed and

AHIF-Oregon had no further opportunity to persuade OFAC to come to a different decision, absent

a request for reconsideration.[3]  I concluded AHIF-Oregon was entitled to post-deprivation notice,

after the February 2004 blocking order, without "unreasonable delay," and certainly before the

September 9, 2004 designation finalizing the blocking order.  AHIF I, 585 F. Supp. 2d at 1255

(citing Gete v. INS, 121 F.3d 1285, 1296 (9th Cir. 1997) (analyzing due process in a civil forfeiture

proceeding)).

---

[3]OFAC is under no obligation to consider a request for reconsideration in a timely
manner.  It took OFAC three years to evaluate AHIF-Oregon's request.  The Ninth Circuit
explained in a footnote that OFAC's regulations do not delineate the designation process except
to set out the reconsideration process.  686 F.3d at 972 n.2 (quoting 31 C.F.R. §501.807)
(regulation permits designated entity to seek reconsideration; OFAC may request "clarifying"
information).

Additionally, I concluded that even if the September 9, 2004 designation letter and press release could serve as notice, for purposes of the redesignation process, it did not give AHIF-Oregon the reasons for the designation in the kind of detail required by the Due Process Clause. Indeed, the designation letter and press release were somewhat deficient in alerting AHIF-Oregon as to how it should defend the possible redesignation.

Similarly, OFAC again failed to give any explanation accompanying its notification to AHIF-Oregon that it was evaluating whether to redesignate the organization. I found it was not until February 2008 when OFAC redesignated AHIF-Oregon that it finally gave a comprehensive explanation for AHIF-Oregon's SDGT status. I described the redesignation notice as a "lengthy explanation" and questioned why OFAC could not have issued such an explanation as a proposed decision just after the blocking order. Id. at 1257. I noted such a comprehensive notice would have provided AHIF-Oregon with the facts and law and would have given it the opportunity to respond to OFAC's concerns in a knowing and intelligent way. OFAC gave the notice four years after AHIF-Oregon's assets had been frozen, three years after the initial designation, six months after AHIF-Oregon filed this lawsuit, and only after AHIF-Oregon's right to add to and complete the administrative record had ended.

Nevertheless, while OFAC's deficient notice to AHIF-Oregon constituted a due process violation, I concluded "any due process violation was harmless beyond a reasonable doubt." AHIF II, 2009 WL 3756363, at *7-9 (quoting Tenn. Secondary Sch. Athletic Ass'n v. Brentwood Acad., 551 U.S. 291, 303 (2007)). The question for me was whether AHIF-Oregon would have presented something different that would have changed OFAC's decision or would have made me find the redesignation arbitrary and capricious. After careful review of the record and AHIF-Oregon's

Page 7 - OPINION AND ORDER

briefing, I concluded the answer was no. Any due process violation was harmless.

II.     The Ninth Circuit's Decision

The Ninth Circuit affirmed my decision that substantial evidence supported OFAC's redesignation of AHIF-Oregon as an SDGT. In addition, the Ninth Circuit affirmed my finding that AHIF-Oregon had suffered a due process violation, but that it was harmless. It reversed my dismissal of AHIF-Oregon's Fourth Amendment claim "and remand[ed] for the district court to determine what judicial relief, if any, is available." AHIF III, 686 F.3d at 970. Finally, it reversed my rejection of MCASO's First Amendment claim.

A.     First Amendment Claim

The Ninth Circuit reversed my dismissal of MCASO's First Amendment claim. The court described and distinguished the Supreme Court's decision in Holder v. Humanitarian Law Project, 130 S. Ct. 2705 (2010), concluding OFAC's "content-based prohibitions on speech" violated MCASO's First Amendment right to engage in the "pure-speech activities proposed by MCASO." Id. at 1001.

B.     Fourth Amendment Claim

The Ninth Circuit rejected application of the special needs exception to support the seizure of AHIF-Oregon's assets. The court concluded the "dispositive question" was whether it was impracticable for OFAC to secure a warrant. Id. at 993. The Ninth Circuit found OFAC could have initially seized the assets pursuant to an emergency exception to the warrant requirement and then have obtained a warrant. It also found the seizure was not justified as being "per se reasonable in all circumstances" under a "general reasonableness" approach to evaluating seizures under the Fourth Amendment. Id. at 994.

Page 8 - OPINION AND ORDER

It held:

> In summary, no exception applies to OFAC's warrantless seizure of AHIF-Oregon's assets and the seizure is not justified under a "general reasonableness" test. We therefore hold that OFAC violated AHIF-Oregon's Fourth Amendment right to be free of unreasonable seizures. Because the district court did not reach the issue of remedy and because the parties did not brief that issue before us, we remand to the district court to determine, in the first instance, what remedy, if any, is available.

Id. at 995.

C.    Due Process Claim

As an initial matter, the Ninth Circuit agreed OFAC "may use classified information, without disclosure, when making designation determinations." Id. at 982. Nevertheless, the Ninth Circuit found OFAC's "failure to pursue potential mitigation measures"–such as providing an unclassified summary of the classified information or allowing AHIF-Oregon's lawyer to view documents after obtaining a security clearance–"violated AHIF-Oregon's due process rights." Id. at 984. The Ninth Circuit did state:

> We recognize that disclosure may not always be possible. For example, an unclassified summary may not be possible because, in some cases, the subject matter itself may be classified and cannot be revealed without implicating national security. Depending on the circumstances, OFAC might have a legitimate interest in shielding the materials even from someone with the appropriate security clearance.

Id. at 983. Here, however, "OFAC eventually presented a list of unclassified reasons to AHIF-Oregon, which could have been augmented by a short unclassified summary of classified evidence." Id. The court noted OFAC had done just that in a similar case–providing an unclassified three-page summary of the classified evidence to the affected entity in KindHearts for Charitable Humanitarian Development, Inc. v. Geithner, 647 F. Supp. 2d 857, 868 (N. D. Ohio 2009).

Page 9 - OPINION AND ORDER

The Court then

> agree[d] that a case-by-case approach is proper.  As we have alluded to
> earlier, the proper measures in any given case will depend on a number of factors.
> We expect the agency (and, if necessary, the district court) to consider, at a
> minimum, the nature and extent of the classified information, the nature and extent
> of the threat to national security, and the possible avenues available to allow the
> designated person to respond more effectively to the charges.

Id. at 984.

The Court then described OFAC's failure to notify AHIF-Oregon of the reasons for the

blocking action for the first seven months after AHIF-Oregon's assets were seized.  It noted "only

one document could be viewed as supplying some reasons for OFAC's investigation and

designation decision" in the entire four-year period between the blocking and the redesignation,

and the document provided incomplete notice.  Id. at 985.  The court held, "[i]n the absence of

national security concerns, due process requires OFAC to present the entity with, at a minimum, a

timely statement of reasons for the investigation."  Id. at 987.

Nevertheless, the court found AHIF-Oregon had "the burden of proving that the error was

harmful."  Id. at 989 (quoting Shinseki v. Sanders, 129 S. Ct. 1696, 1706 (2009)).  The court

concluded "AHIF-Oregon could not have undermined OFAC's conclusion that AHIF-Oregon

supported designated persons.  Accordingly, we need not determine whether AHIF-Oregon could

have undermined OFAC's conclusion that Al-Buthe's control supported its designation

determination."  Id. at 990.  Indeed,

> Viewing the record as a whole, including the classified information, we
> conclude that the procedural due process violations related to AHIF-Oregon's
> support of designated persons was harmless.  Even if AHIF-Oregon had enjoyed
> better access to classified information and constitutionally adequate notice, we are
> confident that it would not have changed OFAC's ultimate designation
> determination.  We therefore affirm the district court's dismissal of the due process

Page 10 - OPINION AND ORDER

claims.

Id.

In its conclusion, the Ninth Circuit summed up its decision as follows:

> OFAC may rely on classified information to make a designation decision.
> But OFAC violated AHIF-Oregon's Fifth Amendment right to due process by
> failing to provide constitutionally adequate notice and a meaningful opportunity to
> respond, and by failing to mitigate the use of classified information by, for example,
> preparing and disclosing an unclassified summary. Nonetheless, because the
> outcome of the designation process in this instance would not have been altered by
> respecting those due process rights, those constitutional errors were harmless and no
> judicial relief is available to AHIF-Oregon. . . . [W]e affirm the district court's
> ruling.

Id. at 1001.

III.     Events Following the Ninth Circuit's Mandate

The Ninth Circuit issued its mandate on March 6, 2012. AHIF-Oregon filed a new request

for reconsideration of its designation on August 24, 2012. In its request, it recited the following

changed circumstances: (1) the resignation of Al-Buthe; (2) the defunct status of AHIF-Saudi

Arabia; (3) lack of evidence AHIF-Oregon supported designated entities; (4) recent Supreme Court

law making it impermissible to punish AHIF-Oregon for conduct that was legal at the time; (5) the

finding, in a criminal case, that the United States failed to prove AHIF-Oregon supported terrorist

activity; and (6) the direction from the Ninth Circuit to provide an unclassified summary of the

classified evidence or security clearances for counsel to review the full record.

OFAC acknowledged receipt of the request on September 14, 2012, indicating it would

prepare and send a questionnaire for AHIF-Oregon to complete. AHIF-Oregon's counsel

responded six days later, demanding: (1) identification of anything new or different in the

unclassified record; (2) access to an unclassified summary of the classified record; and (3)

Page 11 - OPINION AND ORDER

assurance that counsel with security clearances will have access to the classified record.

OFAC sent the questionnaire on October 22, 2012, requesting a response within 90 days and indicating failure to respond "may result in Treasury's denial and administrative closure of the matter, without prejudice to future requests." Ltr. 4, attached to Defs.' Opp'n to Pl.'s Mot. to File a Supplemental Compl. OFAC also explained it was "still in the process of compiling the administrative record upon which its decision will be based. . . . Accordingly, OFAC is not prepared to provide you with the information you request at this time." Id. at 1 n.1. It further explained it would decide whether to disclose classified information "after weighing a number of factors, including, 'the nature and extent of the classified information, the nature and extent of the threat to national security, and the possible avenues available to allow the designated person to respond more effectively to the charges.'" Id. (quoting AHIF III, 686 F.3d at 984).

The parties undertook the court-ordered briefing on the issue remanded by the Ninth Circuit, namely the remedy for the government's violation of AHIF-Oregon's Fourth Amendment rights, and in the midst of the briefing, AHIF-Oregon submitted a motion to file a Rule 15(d) supplemental complaint alleging an ongoing due process violation.

**DISCUSSION**

I.    First Amendment Claim

The parties stipulate to the following judgment:

Judgment is hereby entered for Plaintiff Multicultural Association of Southern Oregon (MCASO) on its First Amendment challenge to the content-based prohibitions in Section 2(a) of Executive Order 13224. MCASO has a First Amendment right to engage in the forms of coordinated advocacy with AHIF-Oregon that it identified in this litigation, including conducting joint press conferences, issuing coordinated press releases, holding demonstrations, contacting the government, and organizing public education activities in conjunction with

AHIF-Oregon, and Defendants are enjoined from enforcing Section 2(a) against
MCASO for engaging in those forms of coordinated advocacy with AHIF-Oregon.

Pls.' Mem. re:  Relief on Remand Ex. 3 [hereinafter, "Pls.' Ex. __"], Order i.  I will enter this

judgment.

## II.    Fourth Amendment Claim

The Ninth Circuit reversed and remanded my dismissal of AHIF-Oregon's Fourth

Amendment claim.  This was the only issued remanded by the court, and it was to determine what

remedy, if any, is available to AHIF-Oregon.

AHIF-Oregon concedes:

[I]n light of the Court of Appeals' effective grant of declaratory relief through this
ruling [that OFAC violated AHIF-Oregon's Fourth Amendment rights], and its
simultaneous affirmance of the redesignation of AHIF-Oregon as supported by
substantial evidence in the administrative record, the Fourth Amendment violation
was in effect harmless error, and no further relief is needed at this time.

Pls.' Mem. re:  Relief on Remand 9.

AHIF-Oregon submits the following proposed language for the judgment:

Defendants violated AHIF-Oregon's Fourth Amendment rights by blocking
its assets indefinitely without obtaining a warrant.  However, because on the
existing administrative record Defendants' blocking of AHIF-Oregon's assets is
lawful under E.O. 13,224, the Fourth Amendment violation was harmless error.

Order ii.

The government does not object or suggest any changes to this proposed language.

Accordingly, I will enter this judgment.

## III.    Due Process Claim

Triggered by its request that OFAC reconsider its redesignation, AHIF-Oregon seeks

injunctive relief and a declaration elucidating its due process rights.  To do so, it requests

Page 13 - OPINION AND ORDER

permission to file a supplemental complaint.[4]  AHIF-Oregon submitted its request for

reconsideration to OFAC, pursuant to 31 C.F.R. § 501.807, on August 24, 2012, but AHIF-Oregon

is concerned OFAC will repeat the due process violations identified by me and the Ninth Circuit.

AHIF-Oregon specifically seeks the following order:

> Defendants violated AHIF-Oregon's Fifth Amendment due process rights
> when [they] redesignated AHIF-Oregon in February 2008, by failing to provide
> constitutionally adequate notice of the factual and legal bases of [the] action, and by
> relying on classified evidence without affording AHIF-Oregon an unclassified
> summary and/or affording its attorneys access to the classified evidence pursuant to
> security clearances.  As AHIF-Oregon has again moved for reconsideration before
> Defendants, and Defendants have not changed [their] practices, Defendants are
> hereby ordered, in connection with the request for reconsideration of its designation,
> to provide AHIF-Oregon with:

> (a) notice of the factual and legal basis for any potential decision to
> redesignate AHIF-Oregon in sufficient detail to allow AHIF-Oregon to confront the
> case against it and to formulate a meaningful response;

> (b) an unclassified summary of any classified evidence upon which
> Defendants seek[] to rely for [their] redesignation decision, sufficient to afford
> AHIF-Oregon meaningful notice of the factual basis for the assertions against it and
> an adequate basis to formulate a response;

> (c) expeditious processing of security clearances for plaintiff's counsel, and,
> assuming security clearances are approved, provision to cleared counsel of access to
> all classified evidence upon which Defendants rely for [the] designation.

Order i-ii.

Its proposed Second Supplemental Complaint recites the history of the case, contending the

Ninth Circuit found a violation of AHIF-Oregon's due process rights "in connection with [AHIF-

Oregon's] request for reconsideration[,]" that OFAC has not changed its regulations, that OFAC

---

[4]AHIF-Oregon's supplemental complaint relieves me of the need to resolve the
government's argument that the Ninth Circuit's mandate left no room for me to afford further
relief to AHIF-Oregon on its due process claim.

took a position contrary to law on security clearances for defense counsel in another case filed in

the Northern District of Ohio, and that AHIF-Oregon has sought reconsideration of its designation.

Proposed Second Supplemental Compl. ¶ 1.  It then alleges:

> OFAC has provided AHIF-Oregon with none of the notice that the Court of Appeals
> held was constitutionally required.  It has failed to provide notice in the form of a
> statement of reasons.  It has failed to provide an unclassified summary of its
> classified record.  And it has already stated that it will not allow counsel with
> security clearance to review the classified record.

Id. at ¶ 6.

AHIF-Oregon's proposed Second Supplemental Complaint contains one claim–that OFAC

is:

> continuing to violate AHIF's Fifth Amendment due process rights by, inter alia,
> failing to provide AHIF with an adequate statement of reasons of the charges
> against it, and relying on classified evidence without pursuing mitigation measures,
> including an unclassified summary and access to the classified evidence by counsel
> with security clearances.

Id. at ¶ 8.

A.    Legal Standards for Rule 15(d) Supplemental Complaint

Federal Rule of Civil Procedure 15(d) provides:

> **Supplemental Pleadings.**  On motion and reasonable notice, the court may, on just
> terms, permit a party to serve a supplemental pleading setting out any transaction,
> occurrence, or event that happened after the date of the pleading to be
> supplemented.  The court may permit supplementation even though the original
> pleading is defective in stating a claim or defense.  The court may order that the
> opposing party plead to the supplemental pleading within a specified time.

The court has "broad discretion" in ruling on a request to supplement the complaint.  Keith

v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988).  "Rule 15(d) permits the filing of a supplemental

pleading which introduces a cause of action not alleged in the original complaint and not in

Page 15 - OPINION AND ORDER

existence when the original complaint was filed." <u>Cabrera v. City of Huntington Park</u>, 159 F.3d

374, 382 (9th Cir. 1998) (internal quotations omitted).  "The purpose of Rule 15(d) is to promote as

complete an adjudication of the dispute between the parties as possible by allowing the addition of

claims which arise after the initial pleadings are filed."  <u>William Inglis & Sons Baking Co. v. ITT</u>

<u>Cont'l Baking Co., Inc.</u>, 668 F.2d 1014, 1057 (9th Cir. 1982).

      The factors relevant to a Rule 15(a) motion to amend complaint have been used in this

context.  Those factors include:  (1) bad faith;  (2) undue delay; (3) prejudice to the opponent; and

(4) futility of the amendment.  <u>Oregon Natural Desert Ass'n v. McDaniel</u>, 282 F.R.D. 533, 537 (D.

Or. 2012) (citing <u>Peterson v. Cal.</u>, No. 1:10-cv-01132-SMS, 2011 WL 3875622, at *5 (E. D. Cal.

Sept. 1, 2011)); <u>see also</u> <u>San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior</u>, 236

F.R.D. 491, 497 (E.D. Cal. 2006).

      B.    <u>Procedural propriety of a Supplemental Complaint</u>

      Courts generally allow motions to supplement when a matter is pending and final judgment

has not yet been entered.  Courts have permitted supplementation following judgment in

circumstances where they have retained jurisdiction and when the challenged conduct involves an

alleged violation of a court order or ruling.  <u>McDaniel</u>, 282 F.R.D. at 537.

      As an initial matter, I question the propriety of a supplemental complaint in this context.

Importantly, this is not a case where I retained jurisdiction over developments in the case.  <u>See, e.g.</u>

<u>Volpe</u>, 858 F.2d at 474 (describing existence of broad consent decree); <u>Planned Parenthood of S.</u>

<u>Ariz. v. Neely</u>, 130 F.3d 400, 403 (9th Cir. 1997) (distinguishing <u>Volpe</u> and others as requiring "the

parties to comply with broad, aspirational directives").  Furthermore, AHIF-Oregon characterizes

the violation as continuing, and one already found "in this identical setting," to liken the new claim

Page 16 - OPINION AND ORDER

with the old cause of action, but I am skeptical.  Pls.' Reply Mem. in Supp. of Mot. for Second

Supplemental Compl. 2.  The procedural posture of the claim proposed in the second supplemental

complaint is very different from the initial posture of the case.  Importantly, as I indicated in the

first two opinions, after notifying AHIF-Oregon it was considering redesignating the organization,

OFAC provided AHIF-Oregon with a comprehensive explanation for the blocking order in

February 2008.  The problem the Ninth Circuit and I identified was the delay between the blocking

order and the eventual explanation.  AHIF I, 585 F. Supp. 2d at 1257; AHIF III, 686 F.3d at 983,

987 ("OFAC eventually presented a list of unclassified reasons to AHIF-Oregon[;]" "due process

requires OFAC to present the entity with . . . a timely statement of reasons for the investigation").[5]

As a result, I question AHIF-Oregon's attempt to couch its claim as one involving the "continuing"

failure to provide it "with an adequate statement of reasons of the charges against it[.]"  Proposed

Second Supplemental Compl. ¶ 8; see also Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003) (a

"(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of

adequate procedural protections" are necessary to allege a due process violation).[6]

     I need not, however, rest my decision on this basis as I agree with the government that the

proposed supplemental complaint, and related request for relief, come too early.

_____

[5]AHIF-Oregon recognizes it has already presented a defense to the redesignation, which it
contends was in the context of a reconsideration proceeding.  It states it has the right to be
notified of the case against it here, just as it did in the previous proceeding.  The difference, of
course, was that OFAC failed to notify AHIF-Oregon of the reasons for the blocking order until it
was too late.  Now, AHIF-Oregon has the 2008 redesignation decision with which to work from
in targeting its request for reconsideration.

[6]Both of these reasons–the lack of continuing jurisdiction and the absence of a violation
similar to the one resolved by AHIF I, II and III–tend to differentiate the proposed Second
Supplemental Complaint from the First Supplemental Complaint, the latter of which I allowed.

Page 17 - OPINION AND ORDER

B.    Futility

The government points out AHIF-Oregon's supplemental complaint alleges a claim not ripe

for review, and any allowance for the filing of a supplemental complaint would be futile.  I agree

and, as a result, I deny AHIF-Oregon's motion.

"The injunctive and declaratory judgment remedies are discretionary, and courts

traditionally have been reluctant to apply them to administrative determinations unless these arise

in the context of a controversy 'ripe' for judicial resolution."  Abbott Labs. v. Gardner, 387 U.S.

136, 148 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977).  In

evaluating whether an issue is ripe for review, I must "evaluate both the fitness of the issues for

judicial decision and the hardship to the parties of withholding court consideration."  Id. at 148-49.

AHIF-Oregon suggests the issue is fit for judicial review because its due process claim is a

purely legal one and no further factual development is required.  I disagree.  As an initial matter,

the test in Matthews v. Eldridge, 424 U.S. 319, 334-35 (1976), which guides the court in analyzing

due process requirements, is a balancing test requiring consideration of (1) the property interest at

stake, (2) the risk of erroneous deprivation, and (3) the government's interest in maintaining its

procedures.  As the Ninth Circuit instructed, "[s]triking a balance between those two strong

competing interests cannot be done in the abstract."  AHIF III, 686 F.3d at 980.  Rather, I must

"carefully assess the precise 'procedures used' by the government[.]"  Id.  Here, AHIF-Oregon asks

me to speculate that OFAC's approach will be the same because the agency has not amended its

regulations.  However, OFAC need not amend its regulations to comply with the law; as I noted in

AHIF I, "[i]n the absence of regulations, the requirements of due process apply."  585 F. Supp. 2d

at 1254.

Page 18 - OPINION AND ORDER

Furthermore, the Ninth Circuit made clear that whether to make classified evidence accessible in some form or another was a decision to be made on a case by case basis. AHIF III, 686 F.3d at 983. Contrary to AHIF-Oregon's contention, OFAC has no obligation to offer unclassified summaries or access to cleared counsel; rather, the Ninth Circuit expects OFAC to "pursue potential mitigation measures" in order to avoid violating a designee's due process rights. Id. at 984. In similar litigation, OFAC has apparently rejected security clearances for plaintiff's counsel because they have no "need to know" the information. See Pls.' Ex. 1. I am not persuaded that a position taken by OFAC in a different circuit, prior to the Ninth Circuit's decision here, is sufficient evidence that OFAC has made a decision which is now properly subject to judicial review, particularly where both OFAC's memorandum to the Northern District of Ohio, and the court in AHIF III, described the efforts the government had already undertaken to disclose classified information to that designee. Here, OFAC is still compiling the applicable administrative record, which it says may consist entirely of unclassified evidence.[7]

With respect to the hardship prong, AHIF-Oregon must show "irremediable adverse consequences" will occur if review is postponed. Toilet Goods Ass'n., Inc. v. Gardner, 387 U.S. 158, 164 (1967). AHIF-Oregon contends it will suffer hardship in two ways: (1) it will be compelled to suffer due process violations in the administrative process; and (2) it might disclose information it might not have to disclose if it had proper notice and access to classified evidence.

---

[7]There is obviously a miscommunication between the parties about what a request for reconsideration means. AHIF-Oregon speculates that it could lead to a redesignation. OFAC describes the request as one for delisting. AHIF-Oregon is under the perception that a request for reconsideration opens up the entire record underlying the designation. OFAC characterizes its future decision as limited to "a decision on the August 2012 reconsideration petition." These are all further reasons to await an agency decision.

AHIF-Oregon's argument assumes OFAC will repeat the due process violations found by the Ninth Circuit, despite now being fully schooled on the parameters of the doctrine. AHIF-Oregon's argument also assumes it has no notice of the case against it, yet it concedes the February 2008 redesignation consisted of "notice." Pls.' Mem. re: Relief on Remand 2. I certainly characterized the redesignation as notice. In short, AHIF-Oregon simply is not in the same spot it was in prior to the 2008 redesignation. For this reason, and the fact that the court described it as an "unusual case," I find inapposite a case AHIF-Oregon relies upon. See Rafeedie v. INS, 880 F.2d 506, 518-19 (D. C. Cir. 1989) (irreparably harmed because if permanent resident alien disclosed his defense in one type of exclusion proceeding under the Immigration and Nationality Act, and it was held inapplicable to him later, the INS would know his defense in advance of the only other kind of exclusion proceeding).

For the foregoing reasons, I decline to award the relief AHIF-Oregon requests with respect to its due process claim, and I deny its request to file a Second Supplemental Complaint.

## CONCLUSION

AHIF-Oregon's Motion to File Rule 15(d) Supplemental Complaint [137] is denied and its Motion for Judgment [132] is granted in part and denied in part. MCASO is entitled to judgment on its First Amendment claim, and AHIF-Oregon is entitled to judgment on its Fourth Amendment claim. AHIF-Oregon's remaining claims are dismissed with prejudice.

IT IS SO ORDERED.

Dated this _____12th_____ day of December, 2012.

_/s/ Garr M. King_____
Garr M. King
United States District Judge

Page 20 - OPINION AND ORDER